EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* ROBERTO MÉNDEZ NADAL y MANUEL RIVERA COLÓN, acusados y apelantes.

*Número:* CR-68-85 *Resuelto:* 27 de junio de 1969

*E. Armstrong de Watlington*, abogado de los apelantes; *Rafael A. Rivera Cruz, Procurador General, Peter Ortiz, Subprocurador General Interino*, y *Adolfo Negrón Cruz, Procurador General Auxiliar*, abogados de El Pueblo.

EL JUEZ ASOCIADO SEÑOR PÉREZ PIMENTEL emitió la opinión del Tribunal.

Como a las diez y media de la noche del 14 de febrero de 1965, se encontraban varias personas en el Colmado-Bar "El Vencedor" ubicado en la calle Providencia frente al Caserío Llorens Torres. A esa hora se presentaron allí Roberto Méndez Nadal con un revólver en la mano seguido de Manuel Rivera Colón, quien tenía un objeto oscuro en la mano derecha al nivel del bolsillo apuntando hacia las personas sentadas en la barra. Detrás de estos dos venían otras personas que permanecieron fuera del negocio. Se inició un tiroteo resultando herido mortalmente Roberto Solís Andújar y con heridas de bala Aníbal Masas Delgado y Miguel Colón Avilés.

Por estos hechos el fiscal presentó acusaciones separadas contra Roberto Méndez Nadal y Manuel Rivera Colón por los delitos de asesinato en primer grado, dos delitos de ataque para cometer asesinato e infracciones a los Arts. 8 y 6 de la Ley de Armas.

Los casos por los delitos graves imputados a ambos acusados se ventilaron conjuntamente ante un jurado. Éste rindió veredicto declarando culpables a ambos acusados de los delitos imputádosles. El juez también les declaró culpables de infracción al Art. 6 de la Ley de Armas.

En este recurso los apelantes señalan la comisión del siguiente único error:

"El uso de las declaraciones extrajudiciales de los co-acusados por el jurado, perjudicó sustancialmente el derecho de éstos a un debido proceso de ley."

Para sostener las acusaciones, el fiscal presentó prueba testifical, prueba objetiva consistente en varios plomos de balas de revólver y las dos declaraciones extrajudiciales de los acusados prestadas en el curso de la investigación de los hechos.

Testigos de cargo declararon que vieron cuando al llegar al colmado-bar, los dos acusados, Méndez al frente y Rivera

Colón detrás, el primero hizo disparos de revólver contra el grupo de personas que se encontraba en la barra. Los disparos fueron hechos desde una puerta de entrada sin que previamente mediaran palabras entre los que estaban en el bar y los recién llegados. No observaron que se hicieran disparos de adentro hacia fuera, ni vieron disparar a los que estaban adentro. Al ocurrir los disparos vieron caer al suelo dos cuerpos humanos, uno el de Roberto Solís Andújar, quien murió a consecuencias de las heridas de bala recibidas y el otro el de Aníbal Masas Delgado. También vieron herido a Colón Avilés. Los testigos de cargo no pudieron identificar el objeto obscuro que Manuel Rivera Colón tenía en su mano derecha, a la altura del bolsillo del pantalón y apuntando hacia los que estaban sentados en la barra. Tampoco pudieron decir si Rivera Colón había o no hecho disparos de revólver.

La declaración extrajudicial prestada por el acusado Roberto Méndez en el curso de la investigación, fue presentada por el fiscal y admitida en evidencia sin la objeción de los acusados. En esta declaración Méndez incrimina al otro acusado Manuel Rivera Colón. Negó que él tuviera armas de fuego y que hubiera disparado. Por el contrario afirmó que al entrar al negocio vio a Rivera Colón disparar con un revólver que éste llevaba en la cintura y vio que una persona conocida por Caña cayó al suelo.[1]

---

[1] Copiamos de dicha declaración:

"Fiscal: Ahora le pregunto, ¿usted desea declarar?

T—Si señor.

F—¿Usted quiere consultar con algún abogado?

T—No señor porque yo lo que voy a declarar es la verdad:

Fiscal: Declare.

T—Que anoche 14 de febrero de 1965 yo andaba en unión a Manuel Rivera Colón, c/p 'Papo', Pedro Pizarro, c/p 'Perucho', Ramón Alvarez, c/p 'Mon' y otro que conozco por Roberto. Entonces unos amigos de nosotros nos dijeron que un individuo c/p 'Caña' y otro que le dicen 'Rata' y otro que conozco por 'Tony' nos estaban velando. Cuando nos dijeron así, nosotros llegamos hasta el Bar El Vencedor donde nos dijeron que ellos estaban. Allí estaban 'Caña', 'Tony', 'Rata' y

La declaración jurada prestada por el acusado Manuel Rivera Colón es una confesión. En ella admite que le hizo cinco disparos a "Caña" a quien vio caer y a Aníbal Masas y a "El Rata". No declaró que Méndez hubiera disparado.(²)

---

dos más. Cuando fuimos para el Bar El Vencedor 'Papo' llevaba un revólver en la cintura. Yo entré al bar y ahí inmediatamente vi a 'Papo' disparar y vi que 'Caña' cayó al suelo. Entonces vi que 'Rata' que estaba en el negocio tiró para afuera, o sea, que disparó también para afuera. Ahí yo me fuí a correr en unión a 'Perucho'.

Quiero añadir además, que 'Caña', que ahora sé que se llamaba Roberto Solís Andújar allá para las navidades le había disparado a 'Papo' y lo hirió.

P—¿En algún momento usted hizo algún disparo en ese negocio cuando ocurrieron los hechos?

T—No señor, yo no tenía ninguna arma encima ni disparé.

P—¿Cuando surgió este incidente, allí surgió alguna discusión?

T—No señor, no hubo discusión alguna, nadie habló nada. Yo entré al negocio e inmediatamente oí los disparos y vi caer a 'Caña' al piso y vi también a 'Rata' que disparó.

P—¿Desea declarar algo más?

T—Nada más, eso es lo que tengo que decir hasta la fecha que fué lo que sucedió y lo que yo vi.

Fiscal: ¿Señor Méndez, esta declaración usted la ha hecho voluntariamente?

T—Si señor.

P—¿A usted alguien lo ha maltratado, le ha pegado, lo han amenazado?

T—No señor, la Detective se ha portado muy bien, me permitieron llamar por teléfono y yo me comuniqué con el dueño de la casa donde trabajo y hasta me dieron almuerzo.

P—¿Cuando ustedes salieron a buscar al herido y al que murió, ya ustedes sabían que ellos los andaban buscando a ustedes?

T—Si señor, porque ya nos lo habían dicho.

P—¿Lo mismo que tú habías peleado con una con anterioridad?

T—Si señor había peleado con 'Tony' y el 'Rata' me había dado un botellazo.

P—¿Cuando ustedes llegaron al sitio no hubo pelea?

T—No señor, ni discusión ninguna, solo sonaron los tiros.

P—¿Tú llamastes a tus familiares?

T—Llamé desde esta oficina a mis familiares, o sea, donde yo trabajo y ellos quedaron si acaso pasaba algo buscarme fiadores." (Exhibit 9, Pueblo, págs. 1–2.)

(²)Copiamos parte de esta declaración:

"P: Usted desea declarar?

R: Sí señor. En cuanto al abogado el papá mío lo consigne pa el día

Respecto a estas declaraciones, el juez instruyó al jurado en la siguiente forma:

"El tribunal les instruye a la dama y los caballeros del jurado que esta declaración que acaba de ser leída y prestada por Roberto Méndez Nadal puede considerarse únicamente en cuanto al caso de Roberto Méndez Nadal, pero no puede tomarse en consideración por ustedes en forma alguna como prueba en contra del otro coacusado Manuel Rivera Colón. No se puede

del juicio. Que el día 15 de diciembre de 1964 yo me hallaba en una barra llamada El Vencedor, en la Calle Providencia de Santurce. Entonces llegaron a ese lugar tres individuos a quienes yo conozco por 'El Caña' que ahora me entero que se llamaba Roberto Solís Andujar y otro más que ahora me entero que le dicen El Rata y que ahora me entero también que se llama Miguel Colón Avilés. Cuando ellos llegaron a esa barra, El Caña dijo en voz alta: 'me voy a cagar en la madre de todos los que están aquí'. Yo le dije a él: 'viejo, eso no es así' y entonces El Caña cogió una silla y la levantó y trató de agredirme con ella. Yo me encontraba en compañía de mi amigo de siempre Roberto Méndez. Cuando El Caña trataba de agredirme con la silla, vino El Rata, o sea, Miguel Colón Avilés y le dió un botellazo por uno de los oídos a Roberto Méndez, que ahora no me acuerdo cuál fue. Entonces, al ver El Caña que nosotros les salíamos fuertes, se fué afuera de la barra, ya que yo me encontraba afuera también porque me iba a ir y vino y me dijo: 'mira pendejo, parate ahí' y entonces ahí vino y me tiró un tiro y lo mascó el revólver y entonces en el segundo tiro que me tiró, me cogió en el hombro derecho y entonces siguió disparando a lo loco. De eso pasaron dos meses y este domingo, ESTE que pasó, 14 de febrero de 1965, yo iba para la cancha del Caserío Llorens Torres a ver si estaban jugando baloncesto o softball, para ponerme a jugar. Cuando iba entrando a la cancha, El Caña, o sea, Roberto Solís Andujar me vió y me dijo: 'tú no te acuerdas de lo que te hice una vez'. Entonces yo le dije que aquello había pasado pero que si quería se viniera al puño y después nos dábamos las manos. Empezamos a pelear y yo le metí un puño y se tambaleó y entonces ahí se le cayó un revólver que yo ví que era uno calibre 38, negro, de cañón largo. Ahí yo cogí el revólver y le puse la mano, o sea, el dedo al gatillo, pero después me arrepentí. Entonces Roberto Solís, c/p El Caña embaló a correr y me dijo: 'yo voy para tu barrio y te voy a matar'. Entonces yo, como vivo en Villa Palmeras y él en el Caserío Llorens Torres, yo me le fué robando la vuelta para no tener que encontrarme con él de nuevo. Entonces el revólver que se le cayó a El Caña, yo me lo llevé para mi casa. Como a las 9:30 P.M. de ese domingo 14 de febrero de 1965, llegó El Caña al barrio mío y dijo en voz alta: 'díganle a Papo, los que me están oyendo, que cuando lo coja, lo voy a matar'. 'Yo soy El Caña del edificio 32 del Caserío'. Yo oí esto porque cuando él lo dijo, yo me encontraba en un sitio cerca de donde llegó él, en un sitio oscuro y detrás de un carro. Ahí, yo tenía la mente turbá y entonces fuí a buscarlo y me decidí una cosa o la otra. Cuando me dirigía al Llorens Torres y cuando todavía no había

tomar esto en consideración en contra de Manuel Rivera Colón. Y, en cuanto a esta otra declaración de Manuel Rivera Colón tampoco podrá ser tomada en cuenta para el otro acusado. Solamente podrá ser tomada en cuenta para el acusado que la presta. Ni a favor, ni en contra; la declaración que prestó Roberto Méndez Nadal no puede ser tomada en consideración por ustedes ni a favor ni en contra de Manuel Rivera Colón, ni la declaración que prestó Manuel Rivera Colón, que va a ser leída a ustedes, podrá ser tomada en cuenta en contra del otro acusado." (T.E., 3a. pieza, pág. 69.)

El acusado Manuel Rivera Colón declaró en el juicio. Trató de probar con su testimonio y con el de una hermana suya, que al día siguiente de los hechos, un grupo de personas que no pudo identificar, fue a la casa de su hermana donde él se encontraba, y le dijeron, aunque no en estas mismas palabras, que se hiciera responsable de la muerte de Solís (conocido por El Caña) y si no lo mataban y que fue por temor que confesó ante el fiscal. Repudió su confesión negando

---

cruzado la Avenida, yo ví a El Caña que estaba metido en el Bar El Vencedor de la Calle Providencia. Yo andaba con Roberto Méndez y ya yo llevaba el revólver que se le había caído a El Caña cuando nos encontramos y peleamos más temprano. En el negocio habían dos puertas abiertas y yo entré por la que le quedaba cerca, una máquina traganíqueles. Ví al Caña que estaba sentado en la barra con Aníbal Masas y El Rata, o sea, Miguel Colón Avilés, que estaba parado, recostao de la traganíqueles. Ahí, con el revólver que se le había caído a El Caña ese mismo día cuando peleamos y que describo en esta declaración y el cual estaba cargado con seis balas, le hice dos disparos a El Caña por la espalda, le disparé también a Aníbal Masas y le hice otro disparo a El Rata. Yo me recuerdo que hice en total cinco disparos. Cuando ví que El Caña cayó herido, entonces le disparé a Aníbal Masas y después a El Rata. Tiré mi revólver encima de una mesa, 'eché' y me fuí. Cuando salí al enrejillao, cogí a Roberto Méndez por una mano y lo halé pa afuera y cuando nosotros nos íbamos, ahí fué que me tiraron dos tiros desde dentro de la barra, por la puerta en donde estaba la traganiqueles. Yo, seguí con Roberto por la calle Colton y yo me fuí a dormir y Roberto también. Por la mañana me fuí a trabajar y cuando estaba en el trabajo oí unos rumores que los hermanos de El Caña me estaban velando pa matarme. Entonces busqué a un amigo mio que lo conozco por Sotero y al Guardia Felipe, que no le sé el apellido pero que trabaja en el Cuartel de Bo. Obrero y les expliqué lo que me sucedía. Sotero, me dijo entonces, que me iba a buscar fiadores. Quiero aclarar que yo me entregué por mi propia voluntad." (Exhibit 12, Pueblo)

que él hubiera disparado contra las personas que resultaron heridas y afirmó que todo lo declarado por él ante el fiscal era mentira, una invención suya para evitar que lo mataran.

Al terminar el contrainterrogatorio del fiscal, el abogado de Méndez solicitó permiso para contrainterrogar. El fiscal se allanó pero el abogado de Rivera Colón se opuso y el juez lo sostuvo por el fundamento de que en su testimonio ante la Corte ese acusado no había incriminado a Méndez.

El acusado Méndez también ocupó la silla testifical y declaró en su defensa. Negó que él hubiera disparado, negó haberle visto un revólver a Rivera Colón y negó saber quien hizo los disparos aunque los oyó detrás de él en los momentos en que llegaron al colmado-bar "El Vencedor". Declaró que lo que dijo al fiscal bajo juramento durante la investigación fue porque se lo informaron a él después de los sucesos.

El abogado del otro acusado no solicitó interrogar ni interrogó a Méndez.

Para fundamentar el error señalado, los apelantes invocan los casos de *Reyes* v. *Tribunal Superior*, 84 D.P.R. 29 (1961); *Pueblo* v. *Cruz Jiménez*, 87 D.P.R. 133 (1963) y *Bruton* v. *United States*, 391 U.S. 123.

Para la fecha en que se celebró el juicio en este caso estaban en vigor las Reglas de Procedimiento Criminal de 30 de julio de 1963. La 91 de esas Reglas dispone que "a solicitud de un coacusado el tribunal ordenará la celebración de un juicio por separado cuando se acusare a varias personas y una de ellas hubiere hecho declaraciones, admisiones o confesiones pertinentes al caso que afectaren adversamente a dicho coacusado, a menos que el fiscal anunciare que no ofrecerá tales declaraciones, admisiones o confesiones como prueba y que tampoco hará, en forma alguna, referencia a las mismas durante el juicio."

■ Esta regla puso fin a la facultad discrecional que desde la Ley Núm. 1 de 10 de noviembre de 1950 tenían nuestros tribunales para conceder juicio por separado a un

490

acusado cuando otro coacusado había hecho declaraciones, admisiones o confesiones que afectaban adversamente a aquél. Se eliminó también mediante esta regla los serios problemas que surgían respecto a la violación del debido proceso de ley cuando se denegaba el juicio por separado y se admitía una declaración o confesión de un acusado que afectaba adversamente a los demás y se privaba a éstos de contrainterrogarle. Aunque en *Delli Paoli* v. *United States*, 352 U.S. 232, el Tribunal Supremo de los Estados Unidos había sancionado bajo determinadas circunstancias la práctica de que el efecto adverso para un acusado de la declaración o confesión extrajudicial de otro coacusado que incriminaba aquél, podía disiparse mediante instrucciones al jurado en el sentido que tal declaración o confesión solamente podía considerarse en cuanto al acusado que la hizo, posteriormente dicho caso fue revocado por el de *Bruton* v. *United States*, 391 U.S. 123, al cual se le dio efecto retroactivo en el de *Roberts* v. *Russell*, 392 U.S. 293.

▐ Como expusimos al principio de esta opinión, contra los apelantes se presentaron acusaciones separadas. No se trata aquí de personas acusadas conjuntamente en una o varias acusaciones. En este caso los apelantes pudieron haber sido unidos en una o varias acusaciones. Como se presentaron acusaciones separadas contra los apelantes, el tribunal tenía facultad discrecional para ordenar que las acusaciones se vieran conjuntamente, conforme lo dispone la Regla 89 de Procedimiento Criminal; (³) pero si se demostrare que un acusado o El Pueblo han de perjudicarse por la celebración de un juicio conjunto, el tribunal puede ordenar el juicio por

---

(³) Dicha Regla dispone:

"El tribunal podrá ordenar que dos o más acusaciones o denuncia⁻ sean vistas conjuntamente si los delitos y los acusados, si hubiere má⌄ de uno, pudieron haber sido unidos en una sola acusación o denuncia. El proceso se seguirá como si se tratare de una sola acusación o denuncia." (Reglas Proc. Criminal, 1963, 2 Práctica Forense Puertorriqueña pág. 107.)

separado de los acusados, según lo dispone la Regla 90, (⁴)
o puede conceder cualquier otro remedio que en justicia pro-
ceda.

■ Los apelantes están impedidos de atacar en este caso
la celebración de un juicio conjunto.

Al llamarse los casos para juicio, el juez que presidía
preguntó que si en vista de que se trataba de acusaciones dis-
tintas pero sobre los mismos hechos, habría objeción a que se
vieran conjuntamente. Estuvieron conformes. Dijo el abo-
gado de uno de los acusados:

"De nuestra parte no hay objeción. Hemos conferenciado
con el distinguido compañero, entonces hemos examinado todo
y hemos llegado a la conclusión que habiendo sido a la misma
hora y el mismo lugar y las mismas personas envueltas, no
habría objeción alguna." (T.E., 1ra. pieza, pág. 2.)

En el transcurso del juicio el abogado del otro acusado
manifestó:

"Vuestro Honor, cuando este caso se llamó para vista noso-
tros dijimos estar listos para entrar a juicio y dijimos que no
teníamos objeción a que el caso se viera conjuntamente con el
del acusado que ahora declaró. Nosotros en las entrevistas que
habíamos tenido con el distinguido compañero, de las lecturas
que habíamos hecho de las confesiones, de las declaraciones de los
acusados, y además de los documentos en el caso, entendíamos,
por lo menos este abogado entendía que que no había conversa-
ciones encontradas, contradictorias en este caso y que por lo
tanto podríamos verlo conjuntamente." (T.E., 3ra. pieza,
pág. 103.)

Ante esta situación procesal cuando se admitieron en evi-
dencia las declaraciones juradas de los dos acusados, el juez

---

(⁴) Dicha Regla 90 de Procedimiento Criminal dispone:
"Si se demostrare que un acusado o El Pueblo han de perjudicarse
por haberse unido varios delitos o acusados en una acusación o denuncia,
por la celebración del juicio conjuntamente, el tribunal podrá ordenar el
juicio por separado de delitos o de acusados, o conceder cualquier otro
remedio que en justicia proceda." (Reglas Proc. Criminal, 1963, 2 Prác-
tica Forense Puertorriqueña pág. 107.)

tomó la única providencia a su alcance entonces para garantizarles un juicio justo, consistente la misma en instruir al jurado, en más de una ocasión, que la declaración extrajudicial de uno de los acusados no podía tomarse en consideración en cuanto al otro.

■ Si no bastara con lo ya dicho y esto no fuere suficiente para concluir que el error señalado por los apelantes no fue cometido, no surge del récord que se violaran sus derechos al debido proceso de ley, independientemente de su aquiescencia a la celebración de un juicio conjunto. Veamos. En su declaración jurada el acusado Roberto Méndez Nadal incrimina al otro acusado Manuel Rivera Colón, pues según reza esa declaración, Méndez vio a Rivera Colón portar un revólver en la cintura y le vio disparando contra el grupo de las personas que resultaron heridas. Sin embargo, Méndez declaró durante el juicio. El otro acusado tuvo la oportunidad de repreguntarle pero no lo solicitó ni lo hizo. No se le privó, por lo tanto, de su derecho a la repregunta que es la base de la decisión del caso de *Bruton*, supra.

La confesión extrajudicial hecha por Manuel Rivera Colón solamente afecta adversamente al acusado Méndez en tanto lo sitúa en el lugar de los hechos y andando en compañía de Rivera Colón. Es cierto que el tribunal no permitió que el abogado de Méndez repreguntara a Rivera Colón por haberse opuesto a ello el abogado de éste. El tribunal incurrió en error al así actuar pues aunque Rivera Colón se limitó en su testimonio oral a impugnar la voluntariedad de su confesión, el fiscal lo confrontó con dicha declaración. El error, sin embargo, no fue perjudicial porque el propio Méndez declaró en el juicio que él andaba en compañía de Rivera Colón y fue con éste al colmado-bar donde ocurrieron los hechos. De suerte que si el propio Méndez se sitúa andando en compañía de Rivera Colón hasta llegar al colmado-bar, nada agrega a eso la confesión de Rivera Colón.

*No habiéndose cometido el error señalado, se confirmarán las sentencias apeladas.*