Octavio JIMENEZ NIEVES, et al., Plaintiffs,

v.

UNITED STATES of America, et al., Defendants.

Civ. No. 80–786 HL.

United States District Court, D. Puerto Rico.

March 1, 1985.

the Federal Tort Claims Act, 28 U.S.C. 1346(b), 2671 et seq. This case has its genesis when the Social Security Administration (SSA) stopped payment on benefits checks which plaintiff Octavio Jiménez had negotiated for his now deceased mother in 1975. The checks were dishonored when an error was made by the SSA in wrongly entering a notation that plaintiff's mother had died in 1975, instead of March 1976. Plaintiff alleges that as a result of this error he was humiliated and suffered the stress of severe financial problems, resulting in great physical, mental and emotional damages affecting him and his entire family, all of which constitutes a tort under Puerto Rico law.

The complaint was originally dismissed on the "misrepresentation" exception to the Federal Torts Claims Act, 28 U.S.C. 2681(h). The Court of Appeals affirmed insofar as the complaint alleges harm by an injury to reputation, and remanded the case for determination of plaintiff's nonreputational injuries caused by the Government's failure to honor its checks. *Jimenez-Nieves, et al. v. United States, et al.*, 682 F.2d 1 (1st Cir.1982). Subsequently this Court, by order filed January 16, 1984, dismissed plaintiff's claim based upon the Government's criminal investigation, as averred in paragraph 17 of the complaint, on the basis of the "discretionary" exception to the Act. Thereafter, on April 11, 1984, the Court granted summary judgment on the minors' claims as time-barred, on the Government's unopposed motion. Consequently, the case went to trial on August 27, 28, and 29, 1984, on plaintiff's claim that defendant's conduct caused him and his wife direct nonreputational injuries by failure to honor its checks. Plaintiff and his wife anchor their claim on Article 1802 of the Civil Code, 31 L.P.R.A. § 5141, which in this jurisdiction is the source of claims for damages caused by fault or negligence.

Blas C. Herrero, Jr., Hato Rey, Puerto Rico, for plaintiffs.

Francisco A. deSosa, Asst. U.S. Atty., Hato Rey, Puerto Rico, for defendants.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

LAFFITTE, District Judge.

Plaintiffs Octavio Jiménez, his wife Josefa Rivera, and their four minor children sued the United States for damages under

### FINDINGS OF FACT.

1. Octavio Jiménez and his wife Josefa Rivera were both born in Comerío, Puerto

Rico, in 1936. They were married in 1959 and are still married. They have four children.

2. Octavio Jiménez' mother received monthly social security checks prior to her death on March 26, 1976. Meanwhile, Jiménez had been negotiating the benefits checks for his mother by cashing them at the bank and other commercial establishments in Comerio, after the checks were endorsed by his mother.

3. Plaintiff's mother died on March 26, 1976. Due to a typographical error made by the SSA, the death of plaintiff's mother was incorrectly entered as of 1975 in the SSA records. Consequently, the SSA proceeded to dishonor eleven checks issued to Mrs. Nieves for the year preceding her death.[1] The foregoing initiated a chain reaction by debiting all future endorsers' checks, including plaintiff, whose bank account was debited for the corresponding amounts. This marked the beginning of plaintiff's ordeal, who has suffered from diabetes mellitus since he was approximately 23 years old.

4. Upon learning about the dishonored checks from his creditors, plaintiff visited the Social Security offices, called them over the telephone, and finally a statement was taken from him and mailed to the SSA, to no avail.[2] His bank continued to debit his account.

5. The evidence showed and the Court finds that the dishonoring of the checks contributed to plaintiff's financial problems as his own bank started pressuring him to pay back the debited amounts. Upon the delicate balance of plaintiff's account, the weight of the approximately $1,000 debited by the bank fell very heavily indeed. The government did not start rehonoring the checks until the middle of the following year, and did not finish repaying until October 1977. No official notice of said rehonoring was ever given to plaintiffs. They learned what they could from the creditors themselves. Plaintiff started to fail in his financial commitments.

6. Plaintiff is an accountant, a hard working man, who held sometimes two jobs and was making plans to take the C.P.A. examination. At the time his mother died in 1976, he was working and studying for the C.P.A. exam.

7. Plaintiff also suffers from a serious case of mellitus diabetes. At present he is confined to a wheelchair and suffers from diabetic neuropathy, which is an accute complication of the disease.[3] Plaintiff had suffered episodes of uncontrolled diabetes in the past. He developed diabetic retinopathy and was referred to a retinologist for laser treatment of his right eye. After the dishonoring of the checks plaintiff's uncontrolled diabetis worsened. He became depressed impotent, withdrawn, and commenced an accelerated rate of physical deterioration. At present, plaintiff is critically ill, receiving dialysis treatment twice a week, almost blind and totally disabled.[4]

8. The evidence disclosed and the Court finds that as a result of his diabetes and the checks incident, plaintiff Jiménez became a victim of a descending spiral in which stress, anxiety, and depression contributed to uncontrolled diabetes. The loss of health combined with the dishonoring of the checks, the resulting fear of loss of earning capacity, and the loss of self es-

1. Several, but not all of the checks were rehonored subsequently.

2. The evidence disclosed that after plaintiff received the first check following his mother's death in 1976, he informed the mailman to return the check to the SSA, as he had already disenrolled her at SSA. Notwithstanding the foregoing, plaintiff was the subject of an investigation by federal agents.

3. Expert testimony presented at trial explained that in diabetic neuropathy, arteries may be affected in different parts of the body like retina, brain, heart, kidneys, legs. Impotency may also, as in this case, develop.

4. Before becoming critically ill and while he was trying to solve the problems ensuing from the dishonored checks, plaintiff would go to his home, shut himself in his room, put out the light, cover himself with a blanket, assume a fetal position, and refuse to see anybody, including wife or children.

teem, contributed to his aggravated circumstances.

9. Plaintiff has been hospitalized various times, and suffered surgical interventions, including partial amputations of both feet. Furthermore, he has totally lost his sexual potency, which has resulted in additional emotional damage to him and to his wife. Today, plaintiff Jiménez is a crippled and almost totally blind man, given to deep bouts of depression and crying spells. His mental capacity has deteriorated and his renal functions have ceased. The quality of his life is nil.

10. Plaintiff's wife, who is also a plaintiff herein, has suffered the anxieties of seeing her husband in such a condition, and has had to cease working in order to take care of her husband.

### CONCLUSIONS OF LAW.

Plaintiffs anchor their claim on Article 1802 of the Civil Code, 31 L.P.R.A. § 5141, which in this jurisdiction is the source of the action for damages caused by fault or negligence. *Mendez v. Serraconte*, 53 PRR 807. *Reyes v. Heirs of Sanchez Soto*, 98 PRR 299 (1970). In order to sustain a valid claim under Puerto Rico tort law, three elements must be present: negligent behavior, damages, and a cause and effect relationship between the two. *Hernandez v. Fournier*, 80 PRR 94 (1957); *Perez Escobar v. Collado*, 90 PRR 785 (1964). Under Article 1802, the right to claim damages in *ex delicto* actions, for humiliation and mental sufferings, independent of the existence of physical damages, has been long established in this jurisdiction. *Muriel v. Suau*, 72 PRR 348 (1951). Consequently, the law of torts in Puerto Rico has revolved around the central theme of compensation to the victim for the damages he or she has suffered. *Diaz v. San Juan Light & Transit*, 17 PRR 64 (1911); *De Gracia v. Guardiola*, 37 PRR 774 (1928); *Rivera v. Rossi*, 64 PRR 683 (1945); *Perez Escobar v. Collado*, 90 PRR 785 (1964).

■ It has been recognized in this jurisdiction that all that is necessary for a negligent act to be considered the effective cause of the damage is that it be the factor that most probably caused it. *Nuñez v. Cintron Ortiz*, 84 JTS 66. A negligent party is responsible for the damages caused if his negligent behavior is a proximate cause of said damages, even if it is not the only proximate cause. *Gines Melendez v. Autoridad De Acueductos y Alcantarillados*, 86 PRR 490. In *First National City Bank of New York v. Gonzalez Martinez*, 293 F.2d 919 (1st Cir.1961), a cause of action predicated on Article 1802 of the Civil Code was acknowledged when the banks committed error in the posting procedure and failed to credit a payment to plaintiff's account. See also, *Melendez v. Banco Credito*, 99 DPR 283 (1970).

■ The Court finds that defendant was negligent in erroneously entering into the records of SSA the date of plaintiff's mother's death, and in dishonoring the checks as a result of defendant's negligence. The issue, then, is not whether defendant incurred in negligence, but whether said negligence was a contributing factor to plaintiff Jiménez' deteriorating condition and the damages that ensued.

The experts' testimony on both sides of the fence testified that the dishonoring of the checks caused stress on plaintiff, and that stress has an effect on the sugar levels of a diabetic person; that the deteriorating rate of plaintiff markedly increased as a result of the emotional, economic, and stressful condition caused by the checks incident.[5] Dr. Carlos E. Ifarraguerry, a psychiatrist and psychoanalyst, who testified on behalf of the Government and sat

---

5. Dr. Miguel A. Cubano, a psychiatrist testifying for plaintiff, testified that the collapse of Jiménez' health was probably caused by the stress, anxiety and depression produced by the Government's dishonoring of the checks and the effects it caused on plaintiff. Dr. Cubano described plaintiff as an obsessive-compulsive type of person, who under normal circumstances succeeds in our society. Such a person, explained Dr. Cubano, is the type who, when faced with adversity does his best to overcome it, but when all efforts fail, will fall pray to severe stress, anxiety, and depression.

at counsel's table throughout the proceedings, and who had previously evaluated plaintiff, testified in his direct testimony that SSA checks incident was a *contributing* factor to plaintiff's emotional condition. He further testified that other factors contributing to Jiménez' condition were economic stress, health stress, plaintiff mother's death, and other significant losses such as sexual impotency and loss of vision. Dr. Ifarraguerry testified that after listening to expert testimony on the issue of damages suffered by plaintiff Jiménez, he attributed approximately 25% thereof to the dishonoring of the checks.

■ The evidence showed that although there were other emotional causes for plaintiff's loss of health, the stress produced by the improper and tortious dishonoring of the checks caused at least, in the opinion of defendant's expert testimony, approximately 25% of the damages suffered by plaintiff. The medical testimony was uncontroverted that defendant's tortious conduct accelerated plaintiff's rate of health deterioration. Thus, it can be safely stated, based on the testimony of both plaintiff's and defendant's psychiatrists, and on the endocrinologists, that plaintiff's aggravation or the deterioration of his prior condition can be attributed, to certain extent, to the dishonoring of the social security checks. *Gonzalez v. Maryland Casualty Co.*, 98 DPR 476 (1970); *Concepcion Guzman v. A.F.F.*, 97 DPR 488 (1965).

On the issue of damages, plaintiff's and defendant's economic experts differed. Dr. Bartolomé Stipec calculated plaintiff's present value of loss of income, based on plaintiff's work history, education, and working history, at $423,000, including interest. The evidence showed, however, that Dr. Stipec based his assessment on an incorrect productive life of 23 years for the plaintiff, and on the assumption that plaintiff could have sustained two jobs.

■ Defendant's economic expert, Dr. Jack E. Hirshbrunner was, in the Court's opinion, more persuasive and accurate on his projections. Based on a ten-year pro-ductive life, which this Court finds persuasive as a reasonable one in the light of medical testimony, Dr. Hirshbrunner projected plaintiff's loss of income at $70,511.95. He also projected plaintiff wife's loss of income for said ten-year period at $14,241.00. Accordingly, relying on Dr. Hirshbrunner's testimony, the Court finds that 25% of plaintiff Jiménez' damages were caused by defendant, and assess Jiménez' loss of earnings at $17,624.98; and plaintiff's wife, Josefa Rivera, at $2,560.00. *Widow of Delgado v. Boston Ins. Co.*, 99 PRR 639 (1971).

Plaintiff Jiménez' physical suffering and mental anguishes, caused by the aggravation of his health attributable to defendant's conduct, are reasonably valued at $10,000.00, and the mental anguishes of his wife are valued at $2,500.00. *Gonzalez v. Fireman's Fund Ins. Co.*, 385 F.Supp. 140 (D.P.R.1974); *Ganapolsky v. Park Gardens Development Corp.*, 439 F.2d 844 (1st Cir.1971); *Cirino v. Fuentes Fluviales*, 91 DPR 608 (1964); *Correa v. A.F.F.*, 83 DPR 144 (1961); *Hernandez v. Fournier*, 80 DPR 93 (1957).

■ In appraising plaintiffs' damages, what matters is that the existence of the damages should not be uncertain or speculative. Once it has been shown that damages exist, and their proximate cause was a tortious act on the part of the defendant, it cannot be said that the same are uncertain or speculative. It does not matter that the determination of the amount thereof may be only approximate, provided that the award rests on a reasonable basis and not on mere speculation or guess. *White Star Bus Line v. Quiñones*, 78 PRR 309 (1955).

WHEREFORE, plaintiff Octavio Jiménez shall recover from defendant the amount of $27,624.98; and plaintiff Josefa Rivera shall recover from defendant the amount of $5,060.00, plus their costs.

IT IS SO ORDERED.