**Felipe Ramos ROSA, et al., Plaintiffs,**

v.

**TELEMUNDO CATV, INC., et al., Defendants.**

Civ. No. 93–1036 (JP).

United States District Court, D. Puerto Rico.

Nov. 30, 1995.

---

Dennis Simonpietri, Hato Rey, PR, for Plaintiffs.

Jaime Morales Morales, San Juan, PR, Luis González Pérez, Hato Rey, PR, Jane Becker, San Juan, PR, for Defendants.

## OPINION AND ORDER

PIERAS, District Judge.

The Court has before it plaintiffs' Motion for a New Trial, defendants Gabriel Suau and El Monóculo, Inc.'s opposition, defendant Telemundo's opposition and plaintiffs' motion to supplement its motion for a new trial, and Telemundo's opposition (docket Nos. 126, 132, 140, 148, and 150). For the following reasons, the Court hereby **DENIES** plaintiffs' motion for a new trial.

On April 11, 1995, the jury in the case at bar returned a verdict finding that defendant Gabriel Suau ("Suau") and El Monóculo, Inc. ("El Monóculo") were negligent in their actions in filming an episode for the television show "TVO" at plaintiffs' residence, on January 24, 1992. The "TVO" show aims to capture unsuspecting individuals on a hidden camera while reacting to a scenario orchestrated to provoke a humorous response. During this particular episode, an actor dressed as an ambulance driver left a completely bandaged "patient" at plaintiffs' residence and identified the patient with a name which resembled José Antonio Ramos López. Plaintiffs Felipe Ramos Rosa and his wife Emilia López Vega believed, at least momentarily, that the patient was their son. After the filming of the episode, Mr. Ramos Rosa experienced an attack similar to a heart attack, and was taken to the hospital.

The jury found that defendants' negligence harmed plaintiffs, Mr. Ramos Rosa and Mrs. López Vega, and awarded plaintiff Ramos Rosa the amount of $55,000.00 in compensatory damages, and plaintiff López Vega $10,-000.00 in damages for her pain and suffering. The jury did not award any damages to plaintiffs' son, José Antonio Ramos López, or plaintiff López Vega's daughter, Doris Esther López Vega de Jesús. Moreover, the jury did not find defendant Telemundo CATV, Inc. ("Telemundo"), jointly liable with defendant Suau, and/or El Monóculo for the harm caused to plaintiffs.

Plaintiffs have brought this motion for a new trial, asserting that the amount of money awarded as damages is so low as to shock the judicial conscience, that the jury's verdict

is inconsistent, and that there is an absence of any rational basis for the verdict. More specifically, plaintiffs contest the jury's verdict for the following five reasons. First, they assert that the jury acted contrary to the evidence in affixing the amount of compensatory damages for Felipe Ramos Rosa at $55,000.00 and the amount of pain and suffering for Emilia López Vega at $10,000.00. Second, that the jury acted contrary to the evidence by failing to award damages for mental suffering to plaintiff Ramos Rosa. Third, they assert that the jury acted contrary to the weight of the evidence when it failed to award any damages to the two plaintiffs, Doris Esther López Vega de Jesús, and José Antonio Ramos. Fourth, plaintiffs assert that the jury should have found Telemundo jointly liable with Suau and/or El Monóculo. Fifth, plaintiffs assert generally that the amount of time the jury took to deliberate, the questions they asked during deliberations, and their answers on the verdict form demonstrate that this was a compromise verdict.

Defendants Suau and El Monóculo, and Telemundo oppose plaintiffs' motion for a new trial, arguing first that plaintiffs have waived any right to contest the jury verdict for failure to raise any of these issues at the time the verdict was rendered, before the jury was discharged. Next, defendants contend that there is no inconsistency in the jury verdict, and that the verdict is squarely based in the evidence as presented at trial.

## I. STANDARD FOR A MOTION FOR A NEW TRIAL—RULE 59

■ Rule 59 of the Federal Rules of Civil Procedure broadly permits a trial court to order a new trial, based upon the motion of a party or upon the Court's own initiative, "for any of the reasons for which new trials have heretofore been granted". Fed.R.Civ.P. 59(a). The decision whether to grant a motion for a new trial lies within the discretion of the trial court. *Allied Chemical Corp. v. Daiflon, Inc.,* 449 U.S. 33, 36, 101 S.Ct. 188, 190, 66 L.Ed.2d 193 (1980). However, trial courts shall exercise their discretion in favor of granting a new trial sparingly since "a jury's verdict on the facts should only be

overturned in the most compelling circumstances." *Wells Real Estate, Inc. v. Greater Lowell Board of Realtors,* 850 F.2d 803, 811 (1st Cir.) *cert. denied,* 488 U.S. 955, 109 S.Ct. 392, 102 L.Ed.2d 381 (1988). *Keeler v. Hewitt,* 697 F.2d 8, 11 (1st Cir.1982). The court shall exercise appropriate caution when deciding whether it is necessary to set aside a jury verdict. *Kearns v. Keystone Shipping Co.,* 863 F.2d 177, 181 (1st Cir.1988).

■ Since the jurors are the ultimate triers of fact, the trial court shall be especially reluctant to order a new trial when the verdict rested upon the jury's determination of the credibility of witnesses. *Ríos v. Empresas Líneas Marítimas Argentinas,* 575 F.2d 986, 990 (1st Cir.1978). Even if the trial court could have reached a verdict opposite from the jury, the court shall not upset a jury verdict which is based on the evidence presented at trial. *Velázquez v. Figueroa–Gómez,* 996 F.2d 425, 428 (1st Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 553, 126 L.Ed.2d 454 (1993). A trial court shall only order a new trial when the verdict is contrary to the substantial weight of the evidence, and allowing the verdict to stand would result in the miscarriage of justice. *Conway v. Electro Switch Corp.,* 825 F.2d 593, 598–99 (1st Cir.1987).

## II. DISCUSSION

The jury verdict finding defendants Suau and El Monóculo negligent, but not defendant Telemundo, for the amount of damages of $55,000.00 compensatory to Felipe Ramos Rosa and $10,000.00 for pain and suffering to Emilia López Vega is not contrary to the substantial weight of the evidence, nor does this verdict result in the miscarriage of justice.

Evidence was presented at trial that on January 24, 1992, individuals working for Suau and El Monóculo filmed an episode intended for airing on the television show "TVO". The episode began when an actor dressed as an ambulance driver knocked on the door of plaintiffs' residence. When plaintiff López Vega answered the door, the actor brought forth a patient wrapped from head to toe in gauze bandages, and stated to plaintiff López Vega that he was under orders to

leave the "patient" at the address of López Vega's house. Plaintiff López Vega asked the ambulance driver if the patient was her son, José Antonio Ramos López, whose name was similar, but not identical to the patient's name as stated by the actor. The actor neither admitted nor denied that the patient was plaintiff's son, instead he just repeated the name of the patient and the address of plaintiffs' residence. He reiterated that he was under orders to leave this patient at this address, and he left the scene.

Plaintiff López Vega conversed with a group of gathering neighbors, questioning who the patient could be. Although Mrs. López Vega speculated that the patient could be her son, she soon realized that the individual was in fact not her son. The patient, meanwhile, neither spoke nor responded to any of plaintiff's questions. After a few moments the patient arose, and informed plaintiff that she had been an unknowing participant in an episode for the TVO show and that a film crew had videotaped the entire episode. The group of neighbors laughed at the episode, but plaintiff did not. Furthermore, plaintiff refused to sign a release form, and this episode was never broadcast on the television channel owned by Telemundo.

Mr. Felipe Ramos Rosa witnessed a portion of the exchange between his wife, the ambulance driver and the patient from the balcony of the house. Within minutes after the filming of the episode, Mr. Ramos Rosa suffered an ischemic attack similar to a heart attack, was taken to the hospital, and a pacemaker was surgically implanted. Later that same day, the pacemaker malfunctioned, and a wire from the apparatus got loose in Mr. Ramos' stomach. He had to undergo a secondary surgical operation to replace the loose wire of the pacemaker.

Plaintiffs first contend that the amount of damages awarded by the jury is too low to compensate the plaintiffs for their injuries. Evidence presented at trial demonstrated that plaintiff Ramos Rosa, a seventy-six year old retired Army Master Sergeant and a retired accountant, suffered from a variety of ailments since 1980, including diabetes, cerebral strokes, and hypertension. Dr. Jorge Castillo, plaintiffs' expert witness, testified that on the afternoon of January 24, 1992, Mr. Ramos Rosa suffered an ischemic attack and experienced an aureoventricular block. In Dr. Castillo's expert opinion, the filming of the episode caused Mr. Ramos Rosa stress, which in turn precipitated the attack. However, Dr. Castillo also testified that Mr. Ramos Rosa could have experienced the same attack without any external stimulus, based upon his existing physical condition.

As to plaintiff López Vega, the jury witnessed the video depicting the exchange between her and the ambulance driver on numerous occasions. Therefore, the jury had the opportunity to view her reactions, and listen to her testimony about how she suffered as a result of the incident itself. Plaintiff's expert witness, Dr. Santiago, testified that plaintiff López Vega suffered from dysthymia, and had to take medication, Xanax, to control her condition. In addition, she and other witnesses testified about the problems that she had experienced during and after the time that her husband was hospitalized.

Based upon this evidence, the jury's verdict is not unconsciously low. The evidence supports the jury verdict that Suau and El Monóculo were negligent in filming the episode, and caused Mr. Ramos Rosa's injuries and Mrs. López Vega's pain and suffering. In determining the amount of damages to be awarded, the jury could have relied upon the evidence which showed that Mr. Ramos Rosa based upon his existing medical condition, could have experienced the attack regardless of defendants' negligence, and that plaintiff López Vega would have experienced pain and suffering if her husband had been hospitalized, regardless of defendants' negligence.

■ The Court finds that this verdict falls "within the universe of possible awards that are supported by the evidence," *Clark v. Taylor,* 710 F.2d 4, 14 (1st Cir.1983), and the verdict "could fairly be said to flow from the evidence adduced at trial," *Ruiz v. González Caraballo,* 929 F.2d 31, 35 (1st Cir.1991). The jury is accorded wide discretion in setting damage awards, especially for mental anguish. *Alvarado Avilés v. Burgos,* 601 F.Supp. 29, 31–32 (D.P.R.1984), *aff'd in part and vacated in part,* 783 F.2d 270 (1st Cir. 1986). "[C]onverting feelings such as pain,

suffering, and mental anguish into dollars is not an exact science. The jury is free 'to harmonize the verdict at the highest or lowest points for which there is a sound evidentiary predicate, or anywhere in between ... so long as the end result does not ... strike such a dissonant chord that justice would be denied were the judgment permitted to stand,' " *Correa, et al. v. Hospital San Francisco*, 69 F.3d 1184 (1st Cir.1995) (quoting *Milone v. Moceri Family, Inc.*, 847 F.2d 35, 37 (1st Cir.1988)). The amount of the jury's award is based upon a sound evidentiary predicate, therefore, it shall remain undisturbed.

■ Plaintiffs next attack the jury's finding that plaintiff Ramos Rosa was not entitled to any damages for his pain and suffering. A plaintiff may seek damages for mental injury in Puerto Rico, separate from damages for physical injury. "Under Article 1802, the right to claim damages in ex delicto actions, for ... mental sufferings, independent of physical damages, has been long established in this jurisdiction." *Jiménez Nieves v. United States*, 618 F.Supp. 66, 69 (D.P.R.1985) (citing *Muriel v. Suau*, 72 P.R.R. 348 (1951)). Consequently, the jury was instructed that they could award each plaintiff, damages for emotional pain, suffering, inconvenience, and mental anguish, as an element of compensatory damages. Nonetheless, in order to recover for these damages, a plaintiff must still prove that defendants' conduct caused the injury.

As previously discussed, the jury could have taken into consideration Mr. Ramos Rosa's physical condition prior to January 24, 1992, in assessing the amount of pain and suffering. The evidence plainly demonstrates that Mr. Ramos Rosa could have experienced an ischemic attack, necessitating the implant of a pacemaker, due to his existing physical condition, regardless of any negligence on defendants' part. Therefore, the jury could have determined that plaintiffs failed to prove the causal nexus in between defendants' conduct and Mr. Ramos Rosa's pain and suffering.

Plaintiffs also presented evidence on the issue of plaintiffs' mental anguish. Plaintiffs' expert on mental damages, Dr. Guillermo Santiago, testified that in his expert opinion, plaintiff Ramos Rosa suffered from a generalized anxiety disorder with obsessive thoughts concerning the safety of his son, which was caused or exacerbated by the events which occurred at his house on January 24, 1992. Moreover, Dr. Santiago testified that Mr. Ramos Rosa feared death due to the experience he had with the implant of the pacemaker, and the further surgery because of the mistake in the first implant. In addition, Felipe Ramos Rosa, Emilia López Vega, José Antonio Ramos López, Doris Esther López Vega de Jesús, and other witnesses testified about the changes that occurred in plaintiff Ramos Rosa's mood and mental state after January 24, 1992.

This evidence, however, was contradicted. Dr. Fortuño, defendants' expert, testified that he found no sign or symptom that Mr. Ramos Rosa suffered from any emotional impairment. The jury could have found Dr. Fortuño's testimony more persuasive. Therefore, the issue of the amount of damages to award Mr. Ramos Rosa for pain and suffering involved the jury's determination of the credibility of the two expert opinions, and the verdict shall stand. *See Ríos v. Empresas Líneas Marítimas Argentinas*, 575 F.2d at 990.

■ Plaintiffs' third assertion is that under Puerto Rico law, José Antonio Ramos López and Doris Esther López Vega de Jesús are both entitled to damages for their pain and suffering as a result of the filming of the "TVO" episode. They cite to cases where juries awarded damages for pain and suffering in similar factual situations and contend that the jury's verdict awarding no damages to these plaintiffs must have been based in passion and prejudice against plaintiffs because they had to return to Buffalo during the middle of the trial.

The jury's verdict is based in a plausible interpretation of the evidence presented at trial, not passion or prejudice. Neither Doris Esther nor José Antonio were present during the filming of the television episode at plaintiff's residence, but heard about the episode after it had occurred. Moreover, both witnesses testified about their pain and suf-

**44**

fering in terms of the family's relocation to Doris Esther's house in Buffalo, New York. It is undisputed that the family had been planning the move to Buffalo long before the filming of the episode on the afternoon of January 1992.

Therefore, the jury could have concluded based upon the evidence that the cause of the pain and suffering was the family's move to Buffalo. Alternatively, the jury could have concluded based upon the evidence that plaintiffs Doris Esther and José Antonio would have experienced pain and suffering if Mr. Ramos Rosa had a schematic attack caused by his existing medical condition, and not by defendants' negligence. This determination involved the jury's weighing the evidence as to cause and effect, and the resolution of the credibility of the testimony of Doris and José Antonio. It is within the province of the jury to reach a credibility determination, and this Court shall not overturn a verdict based upon the jury's determination of various witness' credibility. *See Rios v. Empresas Líneas Marítimas Argentinas*, 575 F.2d at 990.

■ Fourth, plaintiffs contend that the jury's verdict finding Suau and El Monóculo liable but not Telemundo is contradictory. Plaintiffs did present ample evidence that Suau used Telemundo's office space, including furniture, phone, fax, intercom, electricity, air conditioning, water, telephone, security services, parking and personnel for the production of the "TVO" series, and that Telemundo did not charge Suau any extra rental payments. Moreover, there was evidence that Suau's employees received their assignments and later received payment for their work at the Telemundo office. Equipment used for the filming of this particular episode was stored at the Telemundo facilities. Finally, the parties stipulated that the earnings from the "TVO" program represented 1.7% of Telemundo's annual revenue.

On the other hand, defendants presented evidence that pursuant to a contractual agreement between Telemundo and Suau, Telemundo agreed to pay Suau for the completed, filmed television episode. Telemundo paid Suau for each individual episode which was actually aired on the channel, but exert-

ed no control over Suau in terms of the use of the Telemundo space for the production of TVO, nor control over how the episodes were filmed. The specific incident involving plaintiffs was never actually aired on the Telemundo channel, thus, Suau was never paid by Telemundo for this particular episode.

Therefore, there was adequate evidence to support both conflicting legal theories about whether or not Telemundo was jointly liable with Suau for Suau's employees' negligent actions. The jury did not reach a decision which was contrary to the weight of the evidence by choosing one of the valid theories over the other one. In a close call such as this one, the Court is particularly opposed to overturning a jury verdict.

■ Finally, plaintiffs assert that the amount of time during which the jury was in deliberations demonstrates that this is a compromise verdict. They argue that if there had been a unanimous decision regarding Telemundo, that the jury should have reached a decision in a shorter period of time. Plaintiffs further contend that the fact that the jury requested the judge to re-read the jury instructions demonstrates their confusion and resulting compromise verdict. Both of these arguments are meritless. Neither the amount of time for the jury's deliberations, nor the request to re-read the jury instructions necessarily suggests that there was any inconsistency in the jury's verdict nor that this was a compromise verdict. In addition, plaintiffs assert that the verdict form lead the jurors to the inconsistency. Failure to object to the provisions of a special verdict form result in the waiver of those objections. *Van Blargan v. Williams Hospitality Corporation*, 759 F.Supp. 940, 945 n. 4 (D.P.R.1991).

Based upon all the evidence presented at trial and the parties arguments before the Court, the Court does not find that allowing the jury verdict to stand would constitute a miscarriage of justice. Therefore, plaintiffs' motion for a new trial is hereby DENIED.

IT IS SO ORDERED.