Frank **PEEMOLLER SULTAN** and **Ellie Cecilia Peemoller Sultan**, represented by their parents Bernd Peemoller Gurck and Jeannette Sultan García; Britt Marie Peemoller Sultan; Bernd Peemoller Gurck and Jeannette Sultan Garcia, and the conjugal partnership formed by them, Plaintiffs,

v.

**PLEASURE CRAFT CONTENDER 25'**, with Hull Number JDJQQ296L394 and Puerto Rico Registration Number PR3186EE, her engines, tackle, furniture and appurtenances, In Rem; Carlos Orlando Soto Redondo, Norma Campos Prieto, and the conjugal partnership formed by them; Antilles Insurance Company; John Doe, and XYZ Insurance Company, Defendants.

No. Civ. 00–1135(JAF).

United States District Court, D. Puerto Rico.

April 12, 2001.

---

Gilberto F. Benitez–Colon, Rivera, Tulla & Ferrer, Hato Rey, PR, for Frank Peemoller–Sultan, Ellie Cecilia Peemoller–Sultan, Bernd Peemoller–Gurck, Jeannette Sultan–Garcia, Britt Marie Peemoller–Sultan, Conjugal Partnership Peemoller–Sultan, plaintiffs.

Francisco G. Bruno–Rovira, McConnell Valdes, San Juan, PR, for Orlando Soto–Redondo, Norma Campos–Prieto, Antilles Insurance Company, defendants.

## OPINION AND ORDER

FUSTE, District Judge.

Plaintiffs, Frank Peemoller Sultan ("Peemoller Sultan"); his parents, Bernd Peemoller Gurck and Jeannette Sultan García; their conjugal partnership; along with Peemoller Sultan's sisters, Britt Marie Peemoller Sultan and Ellie Peemoller Sultan; bring this maritime tort action against Defendants, Carlos Orlando Soto Redondo; his wife Norma Campos Prieto; their conjugal partnership; Antilles Insurance Company; and unnamed individuals and insurance companies pursuant to 28 U.S.C. § 1333 (1993).[1] *Docket Document No. 19.* Plaintiffs also bring this lawsuit in rem against a vessel, a twenty-five-foot Pleasure Craft contender owned by Defendant Soto Redondo. *Id.*

### I.

### *Factual and Procedural Summary*

Unless otherwise noted, we derive the following factual synopsis from Plaintiffs' Amended Complaint, *Docket Document No. 19.*

This lawsuit arises out of an incident which took place on February 7, 1999, off the northwest shore of the Caja de Muerto island in the municipality of Ponce, Puerto Rico. At the time, Peemoller Sultan was a nineteen-year-old high school student who was planning to join the United States Coast Guard. On the date of the incident, he and four of his friends took his father's boat to Caja de Muerto. *Docket Document No. 28.*

Plaintiffs claim that on February 7, 1999, Defendant Soto Redondo, who was also in the Caja de Muerto vicinity, was operating his vessel in a negligent manner, while pulling a person who was water-skiing on a knee board.

Defendants maintain that Plaintiff Peemoller Sultan was snorkeling and diving alone in an area not designated for swimmers, without a diver's flag, floating buoy, or warning device to signal his presence in the area. *Docket Document No. 9.*

In either case, Defendant Soto Redondo's boat struck Plaintiff Peemoller Sultan while he was swimming to his father's boat. Plaintiff Peemoller Sultan's buttocks and left leg were severely lacerated by contact with the boat and its propellers.

Emergency physicians treated Plaintiff Peemoller Sultan at hospitals in Ponce and San Juan, Puerto Rico. He suffered fractures and open wounds to his left leg, and he lost muscle tissue and bone. Surgeons operated on Plaintiff Peemoller Sultan's leg on three separate occasions and inserted permanent titanium rods into his bones. Plaintiff Peemoller Sultan later underwent rehabilitation therapy. Due to the medications and antibiotics administered to him during his treatment, Plaintiff Peemoller Sultan developed adverse secondary conditions, including gastrointestinal distress and anemia. During the hospitalizations, physicians administered frequent doses of Demerol, a painkiller, to Plaintiff Peemoller Sultan, resulting in significant side ef-

---

1. The statute provides: "[t]he district courts shall have original jurisdiction, exclusive of the courts of the States, of ... [a]ny civil case of admiralty or maritime jurisdiction, saving to suitors in all cases all other remedies to which they are otherwise entitled." 28 U.S.C. § 1333(1).

fects similar to the symptoms of Parkinson's disease.

Due to bone loss, Plaintiff Peemoller Sultan's left leg is now shorter than his right leg, and he frequently requires the use of a cane while walking. He is unable to stand for long periods of time. Additionally, Plaintiff Peemoller Sultan undergoes frequent, painful physical therapy to prevent the muscles in his left leg from atrophying. He experiences pain during times of physical exertion or inclement weather. Plaintiff Peemoller Sultan is also seeing a physician who uses acupuncture and hypnosis techniques to treat his pain and sleep deprivation. He has been treated by a psychiatrist for his mental and emotional injuries. Plaintiff Peemoller Sultan is now unable to pursue his former career goal of becoming a member of the United States Coast Guard.

On January 31, 2000, Plaintiffs filed the instant lawsuit. Plaintiffs allege that Defendant Soto Redondo committed the following negligent acts or omissions: (1) he operated the vessel at a speed exceeding five miles per hour; (2) he failed to keep a proper lookout for swimmers and anchored boats; (3) he failed to keep a lookout at the stern when towing a water-skier; (4) he navigated too close to other boats; (5) he failed to keep a lookout at the bow; and (6) he failed to properly man the vessel, rendering the vessel unseaworthy. Plaintiffs maintain that Defendant Soto Redondo breached various rules and regulations governing water safety.

Plaintiffs seek $4,000,000 to compensate Plaintiff Peemoller Sultan for his injuries. In addition, they seek a total of $1,200,000 to compensate Plaintiff Peemoller Sultan's family for the emotional distress allegedly experienced by them as a result of witnessing his suffering. Each of Plaintiff Peemoller Sultan's parents claim $500,000 in damages for emotional distress, and each of his two sisters seek $100,000 for their alleged emotional injuries. Plaintiffs also claim $1,000,000 in punitive damages.

Defendants move for partial summary judgment. *Docket Document No. 28.* Defendants seek dismissal of the emotional distress claim raised by Plaintiffs Bern Peemoller Gurck, Jeannette Sultan García, Britt Marie Peemoller Sultan, and Ellie Peemoller Sultan. *Id.* Defendants argue that these Plaintiffs have failed to state a claim upon which relief can be granted pursuant to federal maritime law. *Id.* Plaintiffs oppose Defendants' motion for partial summary judgment, *see Docket Document No. 31,* and Defendants have submitted a reply, *Docket Document No. 34.*

## II.

### *Summary Judgment Standard*

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c); *see Lipsett v. Univ. of P.R.,* 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 330, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (Brennan, J., dissenting). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving par-

ty if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.,* 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by 'showing' ... that there is an absence of evidence to support the nonmoving party's case." *Celotex,* 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala,* 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex,* 477 U.S. at 322–35, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson,* 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). In addition, "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Fed-

eral Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e); *see also Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.,* 976 F.2d 791, 794 (1st Cir.1992) and to "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.,* 110 F.3d 174, 178 (1st Cir.1997).

## III.

### *Analysis*

### A. *Negligent Infliction of Emotional Distress Under Admiralty Law*

Defendants maintain that under federal maritime law, Plaintiff Peemoller Sultan's parents and sisters may not prevail on a negligent infliction of emotional distress claim because they were not present at the scene of the collision on February 7, 1999. *Docket Document No. 28.*

Although the United States Court of Appeals for the First Circuit has clearly defined an accident such as the one suffered by Plaintiff Peemoller Sultan as a maritime tort within the admiralty and maritime jurisdiction of the federal courts, *Medina v. Perez,* 733 F.2d 170, 171 (1st Cir.1984), the First Circuit has not expressly decided whether a cause of action for negligent infliction of emotional distress lies in admiralty.[2] In *Ellenwood v.*

---

**2.** In *In re United States Coast Guard Vessel,* 418 F.2d 264 (1st Cir.1969), the plaintiff, a member of a ship's crew, was thrown overboard during the vessel's grounding and sinking. *Id.* at 267. The First Circuit found that "recovery may be had for the physical consequences of mental disturbance" caused by the defendants' negligence. *Id.* at 268–69. The court defined "physical consequences" as an objective condition or illness, such as a "defi-

nite nervous disorder." *Id.* Here, Plaintiffs have not alleged that Plaintiffs Bernd Peemoller Gurck, Jeannette Sultan Garcia, Britt Marie Peemoller Sultan, and Ellie Peemoller Sultan have developed a "definite nervous disorder" as a result of the February 7, 1999 incident. Hence, we assume that the instant case does not fall within the purview of *Coast Guard Vessel.*

*Exxon Shipping Co.,* 984 F.2d 1270 (1st Cir.1993), the First Circuit declined to decide whether a seaman may recover damages for negligent infliction of emotional distress in the absence of a showing of physical injury, because the plaintiffs failed to specify which acts or omissions committed by the defendant constituted negligence. *Id.* at 1282–83.

Relying on the Supreme Court's Federal Employers' Liability Act ("FELA")[3] jurisprudence, other federal courts have recognized that a cause of action for negligent infliction of emotional distress lies in admiralty. In *Chan v. Society Expeditions, Inc.,* 39 F.3d 1398 (9th Cir.1994), the plaintiffs were passengers on a cruise ship to the Polynesian islands. *Id.* at 1401–02. While being ferried to a coral atoll via inflatable raft, the plaintiffs were thrown into the surf when the raft capsized, and they suffered physical and/or emotional injuries. *Id.* Citing *Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 550, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994), the Ninth Circuit held that "claims for emotional distress are cognizable under admiralty law." *Id.* at 1409.

■ In reaching its holding, the Ninth Circuit reviewed the three main alternative standards governing liability for negligent infliction of emotional distress. Under the "physical injury or impact" test, a plaintiff may recover damages only if he or she experiences physical contact or injury in addition to the emotional distress. *Id.* Under the "zone of danger" standard, a plaintiff need not experience physical injury or impact to recover damages so long as the plaintiff witnesses the endangerment of another and is also placed at risk of physical injury due to the defendant's negligence. *Id.* Under the "bystander proximity" theory, a plaintiff may recover for emotional damages if he or she: (1) is

physically close to the scene of the accident; (2) directly witnesses the incident; and (3) is a close relation of the victim. *Id.*

The *Chan* court noted that in *Gottshall,* the Supreme Court had adopted the "zone of danger" standard for negligent infliction of emotional distress cases brought under FELA, but the Ninth Circuit declined to decide which theory would govern lawsuits brought in admiralty. *Id.* Other federal courts have subsequently followed *Gottshall* and applied the "zone of danger" standard to claims of negligent infliction of emotional distress raised in admiralty cases. *See Yballa v. Sea–Land Servs., Inc.,* 919 F.Supp. 1428, 1435 (D.Haw.1995) (Jones Act case); *Williams v. Carnival Cruise Lines, Inc.,* 907 F.Supp. 403, 406 (S.D.Fla.1995).

Here, Defendants argue that Plaintiffs Bern Peemoller Gurck, Jeannette Sultan García, Britt Marie Peemoller Sultan, and Ellie Peemoller Sultan have not stated a claim upon which relief can be granted because they were not present at Caja de Muerto on the date of the collision between Plaintiff Peemoller Sultan and Defendant Soto Redondo's boat. *Docket Document No. 28.* Defendants have submitted excerpts of the deposition of Plaintiff Peemoller Sultan tending to show that neither his parents nor his sisters were physically near the scene of the February 7, 1999 incident. *Id.* at Exh. A. Plaintiffs have not proffered any evidence controverting Defendants' submissions, nor do they argue that Plaintiff Peemoller Sultan's parents or sisters were present at Caja de Muerto on February 7, 1999.

■ As a matter of federal maritime law, a plaintiff may not recover damages for negligent infliction of emotional distress for injury sustained by another un-

---

**3.** 45 U.S.C. §§ 51–60 (1982).

less he or she was near the scene of the accident. *See Chan,* 39 F.3d at 1409–10; *Yballa,* 919 F.Supp. at 1435; *Williams,* 907 F.Supp. at 406. Consequently, Plaintiffs Bernd Peemoller Gurck, Jeannette Sultan García, Britt Marie Peemoller Sultan, and Ellie Peemoller Sultan have not stated a claim for negligent infliction of emotional distress because they were not physically close to the scene of the collision on February 7, 1999. Although a cause of action for negligent infliction of emotional distress exists in admiralty, these Plaintiffs may not recover under either the physical injury or impact, zone of danger, or bystander proximity theories, since none of them were at Caja de Muerto at the time of the incident.

## B. *Puerto Rican Federal Relations Act*

Plaintiffs argue, in the alternative, that the Puerto Rican Federal Relations Act, 48 U.S.C. §§ 731–916 (1982 & Supp. I.2000),[4]

empowers Puerto Rico to enact legislation inconsistent with federal maritime law. *Docket Document No. 31.* Plaintiffs submit that 12 L.P.R.A. § 1395e(h) (1997) is a statute which is inconsistent with and supersedes maritime law.[5] *Id.* Plaintiffs claim that under Puerto Rico law, an injured party need not be near the scene of an accident to recover damages for negligently inflicted emotional distress arising from injury to another. *Id.* Plaintiffs argue that in Puerto Rico, a plaintiff need only show that in " 'some appreciable measure the health, welfare and happiness of the claimant were really affected.' " *Ruiz–Rodriguez v. Colberg–Comas,* 882 F.2d 15, 17 (1st Cir.1989) (citing *Moa v. Commonwealth,* 100 P.R.R. 572, 585–86, 1972 WL 34028 (1972)). Defendants contend that 12 L.P.R.A. § 1395e(h) does not apply to the instant case. *Docket Document No. 34.* A plain reading of section 1395e(h) reveals that the statute, while not

4. The Federal Relations Act provides:
 The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters, owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, are placed under the control of the government of Puerto Rico.... All laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said island and waters and to its adjacent islands and waters....
 48 U.S.C. § 749.
 The statute further stipulates:
 [This property is] placed under the control of the government of Puerto Rico, to be administered for the benefit of the people of Puerto Rico; and the Legislature of Puerto Rico shall have authority, subject to the limitations imposed upon all its acts, to legislate with respect to all such matters as it may deem advisable.

48 U.S.C. § 747.

5. Plaintiffs repeatedly and erroneously cite to 13 L.P.R.A. § 1395(e), which has been repealed since 1956. That subtitle of the Laws of Puerto Rico Annotated dealt with internal revenue taxes. The language quoted by Plaintiffs appears in Title 12:

 The owner of any motorboat, ship or other navigation vessel or cross-country vehicle shall be liable for any injury or damage caused through the culpable or negligent operation of such vessel whenever it is operated by or under the control of any person who, for the primary purpose of operating it or of causing or permitting it to be operated by a third person, obtains possession thereof with the express or tacit authorization of the owner. In all cases it shall be presumed, save evidence to the contrary, that the person operating or controlling a motorboat, ship or navigation vessel has obtained possession thereof with the owner's authorization for the primary purpose of operating it or of causing or permitting it to be operated by a third person.
 12 L.P.R.A. § 1395e(h).

inconsistent with federal admiralty law, is inapplicable to the facts of this case.

 Under the "saving to suitors" clause of the statute conferring admiralty jurisdiction, federal maritime law may be supplemented by state law in very discrete and exceptional procedural or remedial circumstances. *See* 28 U.S.C. § 1333. "The extent to which state law may be used to remedy maritime injuries is constrained by a so-called 'reverse-*Erie*' doctrine which requires that the substantive remedies afforded by the States conform to governing federal maritime standards." *Offshore Logistics, Inc. v. Tallentire,* 477 U.S. 207, 223, 106 S.Ct. 2485, 91 L.Ed.2d 174 (1986) (internal citations omitted). State legislation impacting maritime activity is not valid "if it contravenes the essential purpose expressed by an act of Congress, or works material prejudice to the characteristic features of the general maritime law, or interferes with the proper harmony and uniformity of that law in its international and interstate relations." *S. Pac. Co. v. Jensen,* 244 U.S. 205, 216, 37 S.Ct. 524, 61 L.Ed. 1086 (1917).

In *Guerrido v. Alcoa Steamship Co.,* 234 F.2d 349 (1956), the First Circuit examined the unique status of Puerto Rico as a United States territory with regard to preemption of admiralty law. The court analyzed the Puerto Rican Federal Relations Act, as well as other statutes, in deciding that:

> [t]he rules of the admiralty and maritime law of the United States are presently in force in the navigable waters of the United States in and around the island of Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legislation.

*Id.* at 355. The First Circuit noted that the Puerto Rican legislature could not preempt a federal statute expressly applied by Congress to Puerto Rico. *Id.*

Plaintiffs do not argue that the admiralty rule requiring claimants to be close to the accident scene to recover for negligent infliction of emotional distress was "not designed to apply to Puerto Rican waters." Instead, Plaintiffs claim that this admiralty rule does not apply to Puerto Rico because of inconsistent Puerto Rican legislation, specifically 12 L.P.R.A. § 1395e(h). *Docket Document No. 31.*

Section 1395e(h) provides that an owner of a vessel will be liable for culpable or negligent operation of the vessel by a third person. *See* 12 L.P.R.A. § 1395e(h). The statute does not pertain to a claim of negligent infliction of emotional distress in an admiralty case. Moreover, section 1395e(h) has no application whatsoever to this case, since Defendant Soto Redondo, the owner of the vessel, was allegedly operating the boat himself at the time of the collision involving Plaintiff Peemoller Sultan. Defendant Soto Redondo had not granted authorization to a third person to operate his vessel. For these reasons, we reject Plaintiffs' argument that the federal admiralty rule is superseded by Puerto Rico law.

Our holding is consistent with previous cases in which this court applied federal maritime law in actions originating in the territorial waters of Puerto Rico. *See Santiago v. Sea–Land Serv., Inc.,* 366 F.Supp. 1309, 1313 (D.P.R.1973) ("The requirement of uniformity ... prescribes that the federal admiralty courts should proceed according to the national Maritime Law and limit their power to borrow local law by way of supplementation or modification thereof."); *Fireman's Ins. Co. v. Gulf P.R. Lines, Inc.,* 349 F.Supp. 952, 960 (D.P.R. 1972) (finding that the Civil Code of Puer-

to Rico had no bearing on an admiralty and maritime case and applying a federal maritime statute); *P.R. v. Sea–Land Serv., Inc.*, 349 F.Supp. 964, 968, 971 (D.P.R. 1970) (finding that federal statutes, rules, and regulations governing transportation of goods via water had not been superseded by local Puerto Rican legislation).

## IV.

### *Conclusion*

In accordance with the foregoing, we **GRANT** Defendants' motion for partial summary judgment, *Docket Document No. 28.*

**IT IS SO ORDERED.**