Michael E. KUNKEL (A/K/A Michael E. Young) and Maria I. Campbell Garcia, Plaintiffs,

v.

MOTOR SPORT; INC.; Nauti Sports, Inc.; Jose Arturo Fossas Martinez; Guillermo de Lemos, Belinda Negron, and the Legal Conjugal Community Partnership constituted between both spouses; Hunter Marine Corporation; US Spars, Inc.; Mapfre Group Praico (F/K/A Puerto Rican American Insurance Company); New Hampshire Insurance Company; Valley Forge Insurance Company, and other unknown insurance companies, Defendants.

No. CIV. 03–1116(JAF).

United States District Court, D. ·Puerto Rico.

June 2, 2004.

Raul M. Arias–Marxuach, McConnell Valdes, San Juan, PR, for U.S. Spars, Inc., Counter Claimant.

Enrique A. Baez–Godinez, Law Office of Enrique A. Baez Godinez, San Juan, PR, Juan J. Martinez–Rodriguez, Calvesbert Law Offices PSC, San Juan, PR, for Maria I. Campbell–Garcia, Michael E. Kunkel, Plaintiffs.

Ian P. Carvajal–Zarabozo, Saldana & Carvajal, San Juan, PR, Charles DeMier–LeBlanc, De Corral & De Mier, San Juan, PR, for Puerto Rican American Insurance Company, Defendant.

Francisco E. Colon–Ramirez, Colon, Colon & Martinez, San Juan, PR, for Hunter Marine Corporation, New Hampshire Insurance Company, Counter Claimants.

Rafael A. Ojeda–Diez, Ojeda & Ojeda, San Juan, PR, for Conjugal Partnership De–Lemos–Doe, Nauti Sports, Inc., Guillermo De–Lemos, Motor Sport, Inc., Counter Claimants.

Manuel Sosa–Baez, Saldana & Carvajal, San Juan, PR, for Motor Sport, Inc., Puerto Rican American Insurance Company, Guillermo De–Lemos, Jose Arturo Fossas–Martinez, Defendants.

### OPINION AND ORDER

FUSTE, Chief Judge.

Plaintiffs, Michael E. Young (F/K/A Michael E. Kunkel) ("Plaintiff Young") and Maria I. Campbell García ("Plaintiff Campbell"), bring this action against Motor Sport, Inc.; Nauti Sports, Inc.; José Arturo Fossas Martínez; Guillermo de Lemos; Belinda Negrón, Guillermo de Lemos' wife, and the Legal Conjugal Community Partnership constituted between both spouses; Hunter Marine Corporation; US Spars, Inc.; Mapfre Grupo Praico (F/K/A Puerto Rican American Insurance Company); New Hampshire Insurance Company; Valley Forge Insurance Company; and other unknown insurance companies, (collectively, "Defendants"), alleging various personal injuries, breach of warranties, failure to warn, and liability under 26 P.R. LAWS ANN. § 2003 (1997 & Supp.2000). *Docket Document No. 1.* Plaintiffs seek compensatory, punitive, and non-pecuniary damages, and attorney's fees. *Id.* We have admiralty and maritime jurisdiction. 28 U.S.C. § 1333. (1993 & Supp.2003). Defendants have filed coun-

terclaims against Plaintiff Campbell. *Docket Document Nos. 11, 12, 13, 35.*

All Defendants except U.S. Spars move for partial summary judgment. *Docket Document Nos. 19, Reply Tendered on June 17, 2003, Response Tendered on October 17, 2003.* Plaintiffs oppose the motion. *Docket Document Nos. 34, 58, Sur-reply Tendered on August 1, 2003, Supplemental Sur-reply Tendered on August 12, 2003.* Upon careful review of the pleadings, the submitted evidence, and applicable case law, the court grants in part and denies in part Defendants' motion for partial summary judgment.

## I.

### *Factual and Procedural Synopsis*

Unless otherwise indicated, we derive the following factual summary from the complaint and the statements of facts submitted by the parties in their summary judgment and opposition motions. *Docket Document Nos. 1, 19, 34, 58.*

Plaintiffs Campbell and Young are citizens of the United States residing in Fajardo, Puerto Rico. Plaintiffs have been married to each other since March 15, 1997.

Defendant Motor Sport, Inc., ("Defendant Motor Sport") was incorporated pursuant to the laws of the Commonwealth of Puerto Rico and is engaged in the business of selling motorcycles, jet skis, motorboats, and sailboats. Defendant Motor Sport is the authorized dealer for Hunter sailboats in Puerto Rico.

Defendant Nauti Sport, Inc., ("Defendant Nauti Sport") was incorporated pursuant to the laws of the Commonwealth of Puerto Rico and has its principal place of business in Guaynabo, Puerto Rico.

Defendant José Arturo Fossas Martínez ("Defendant Fossas") is a citizen of the United States, and is a shareholder, a director, and the president of Motor Sport, Inc.

Defendant Guillermo de Lemos ("Defendant de Lemos") is a citizen of the United States, and is a salesperson, broker, and employee of Defendant Motor Sport.

Defendant Belinda Negrón is married to Defendant de Lemos and, together with him, they constitute a legal conjugal community partnership under the laws of Puerto Rico.

Defendant Hunter Marine Corporation ("Defendant Hunter") is a corporation with its principal place of business in Alachua, Florida, and is the manufacturer and builder of Hunter sailboats.

Defendant U.S. Spars, Inc., ("Defendant U.S. Spars") was incorporated pursuant to the laws of the State of Florida and is engaged in the business of selling boating products. Defendant U.S. Spars has its principal place of business in Alachua, Florida.

Defendant Mapfre Group Praico ("Defendant Mapfre") is an insurance company and has its principal place of business in San Juan, Puerto Rico. Defendant Mapfre issued several insurance policies to Defendants Motor Sport and Nauti Sport.

Defendant New Hampshire Insurance Company provides insurance coverage for Defendant Hunter.

Defendant Valley Forge Insurance Company provides insurance coverage for Defendant U.S. Spars.

On or about October 2001, Plaintiff Campbell considered purchasing a sailboat. Plaintiff Campbell saw an advertisement in *El Nuevo Día* newspaper where Defendant Motor Sport was offering to sell a 1998 Hunter 340 ("the vessel"). Plaintiffs contacted Defendant Motor Sport to inquire about the vessel. Defendant de Le-

mos informed Plaintiffs that the vessel was a lightly used "demo" boat that had not suffered damages by reason of its prior use.

During the negotiations, Plaintiffs learned from a third party that the vessel's mast had a problem. Plaintiffs raised the concern with Defendant de Lemos, who advised them that the problem was with the mast step compression post. This, Defendant de Lemos claimed, was a Hunter manufacturing defect that had been remedied by Motor Sport, the Hunter dealer, as a modification or a repair covered by Hunter's warranty.

Thereafter, Plaintiff Campbell hired a marine surveyor, Edgardo J. Jiménez ("Jiménez"), to survey the vessel and estimate its fair market value. On October 25, 2001, Jiménez surveyed the vessel and prepared a report describing the vessel as "exhibiting a general as new condition." Jiménez also reported that the vessel was in a "re-commissioning process" and that the "vessel is going to be warranted by the dealer as a new vessel."

Relying on Jiménez's report and Defendant Motor Sport's representations that the vessel was in good condition, Plaintiff Campbell purchased the vessel on November 1, 2001. Defendant Motor Sport treated Plaintiff Campbell as a "first-use purchaser" and issued a Hunter Marine Limited Warranty ("the warranty").

After Plaintiff Campbell purchased the vessel, Defendant de Lemos and Plaintiffs launched the vessel and performed a sea trial. Thereafter, Plaintiff Campbell invested five thousand dollars ($5,000.00) in purchasing and installing additional electronic and other necessary equipment in the vessel, and documented it with the U.S. Coast Guard. Plaintiffs named the vessel "SIRENA." Plaintiffs allege that the vessel was previously named "YOKA-HU" and had been extensively used by Defendant Motor Sport and/or Defendant Fossas. *Docket Document No. 1.*

Once the vessel was berthed at its wet slip at Marina Puerto del Rey in Fajardo, Puerto Rico, Plaintiff Young noticed that there was a difference between the spacing where the diamond diagonal shrouds cross each other on the vessel's port side and on the starboard side. Plaintiff Campbell hired Quino Sánchez ("Sánchez"), a local sailboat rigger, to tune the vessel's standing rigging.

On November 29, 2001, Sánchez inspected the vessel's standing rigging and discovered three stress cracks in the mast close to the upper forestay fitting. Plaintiffs had not used the vessel since the sea trial on November 3, 2001.

Acting on Plaintiffs' behalf, Sánchez notified Julian Crisp ("Crisp"), a U.S. Spars employee, regarding the cracks he had discovered. Crisp instructed Sánchez to send him information pertaining to the problem. Sánchez then instructed Campbell not to move the vessel until the cracks were duly evaluated.

Through de Lemos, Plaintiff Campbell reported to Defendant Motor Sport regarding the stress cracks and the irregular rigging. Defendants Motor Sport and de Lemos sent Luis Val–Lloberas ("Val–Lloberas"), a local sailboat rigger, to inspect the vessel's mast. Val–Lloberas observed the cracks and took several digital photographs of the vessel's mast.

The following day, Defendant de Lemos traveled to Florida to present Val–Lloberas' findings to Defendant Hunter and Crisp. On the same day, Defendant de Lemos called Plaintiff Campbell to inform her that he had consulted with Defendant Hunter and Crisp. Plaintiffs allege that Defendant de Lemos made the following representations: (1) the stress cracks were superficial; (2) there was no need to repair

the mast; and (3) there would be no problem in using the vessel. *Id.*

Based on these representations, Plaintiffs took a cruising vacation to the British Virgin Islands from December 20, 2001, to January 2, 2002, during which no incidents concerning the vessel took place.

After the British Virgin Islands vacation, Plaintiff Young noticed several cracks surrounding the vessel's keel. Plaintiffs allege that they reported the cracks to Defendant Motor Sport, and that Defendant de Lemos explained that Defendant Fossas had required a modification of the keel, but that the modification was not a problem.

On February 14, 2002, Plaintiff Young embarked on a trip to the United States Virgin Islands during which the vessel's mast collapsed in a dismasting incident on the east side of Culebra, within the territorial waters of Puerto Rico and navigable waters of the United States. Once the mast failed, the vessel began rolling heavily. Although Plaintiff Young tried to save or secure the mast, he was unable to do so. During Plaintiff Young's attempt to secure the mast, he suffered various injuries to his spinal cord.

Plaintiff Young motored the vessel to St. Thomas, where he went into the Emergency Room at Roy L. Schneider Hospital and received pain alleviation injections and tablets. When he returned to Puerto Rico, he continued to feel pain in his lower back, right buttock, and right leg. Plaintiff Young underwent approximately ten electrical and ultrasound treatments, and four spinal nerve blocks. Nerve studies and magnetic resonance imaging of Plaintiff Young's lower back revealed soft tissue damage.

In August 2002, Plaintiff Young was diagnosed with a herniated disc at L4–L5, which required surgery on September 24, 2002, whereby the disc at L4–L5 was completely removed. Dual metallic rods and four screws were installed in Plaintiff Young's back, and bone grafts were done to fuse together the vertebrae. Plaintiff Young underwent post-operative therapy for nine months.

Plaintiffs filed the present complaint on February 6, 2003, alleging: (1) fault/negligence; (2) breach of expressed warranty; (3) breach of implied warranty of merchantability; (4) breach of implied warranty of fitness for a particular purpose; (5) strict liability; (6) loss of earnings; (7) negligent infliction of emotional distress; (8) personal injuries; (9) loss of consortium; (10) loss of society; (11) failure to warn; and (12) liability under 26 L.P.R.A. § 2003. *Docket Document No. 1.* Plaintiffs seek compensatory, punitive and nonpecuniary damages and attorney's fees. *Id.*

On April 24, 2003, Defendants Mapfre, Motor Sport, de Lemos, and Fossas moved for partial summary judgment ("Mapfre's motion"). *Docket Document No. 19.* Plaintiff Campbell filed an opposition on May 12, 2003. *Docket Document No. 34.* Defendants filed a reply, *Docket Document Tendered on June 17, 2003,* and Plaintiff Campbell filed a sur-reply. *Docket Documents Tendered August 1, 2003 and August 12, 2003.*

## II.

### *Standards*

**A. *Motion for Summary Judgment Standard under Rule 56(c)***

The standard for summary judgment is straightforward and well-established. A district court should grant a motion for summary judgment "if the pleadings, depositions, and answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Lipsett v. Univ. of P.R.*, 864 F.2d 881, 894 (1st Cir.1988). A factual dispute is "material" if it "might affect the outcome of the suit under the governing law," and "genuine" if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The burden of establishing the nonexistence of a genuine issue as to a material fact is on the moving party. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 331, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden has two components: (1) an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and (2) an ultimate burden of persuasion, which always remains on the moving party. *See id.* In other words, "[t]he party moving for summary judgment ... bears the initial burden of demonstrating that there are no genuine issues of material fact for trial." *Hinchey v. NYNEX Corp.*, 144 F.3d 134, 140 (1st Cir.1998). This burden "may be discharged by showing that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. After such a showing, the "burden shifts to the nonmoving party, with respect to each issue on which he has the burden of proof, to demonstrate that a trier of fact reasonably could find in his favor." *DeNovellis v. Shalala*, 124 F.3d 298, 306 (1st Cir.1997) (citing *Celotex*, 477 U.S. at 322–25, 106 S.Ct. 2548).

Although the ultimate burden of persuasion remains on the moving party and the court should draw all reasonable inferences in favor of the nonmoving party, the nonmoving party will not defeat a properly-supported motion for summary judgment by merely underscoring the "existence of some alleged factual dispute between the parties"; the requirement is that there be a genuine issue of material fact. *Anderson*, 477 U.S. at 247–48, 106 S.Ct. 2505; *Goldman v. First Nat'l Bank of Boston*, 985 F.2d 1113, 1116 (1st Cir. 1993). In addition, "factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Under Rule 56(e) of the Federal Rules of Civil Procedure, the nonmoving party "may not rest upon the mere allegations or denials of the adverse party's pleadings, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); *see also Anderson*, 477 U.S. at 256, 106 S.Ct. 2505. Summary judgment exists to "pierce the boilerplate of the pleadings," *Wynne v. Tufts Univ. Sch. of Med.*, 976 F.2d 791, 794 (1st Cir.1992), and "determine whether a trial actually is necessary." *Vega–Rodriguez v. P.R. Tel. Co.*, 110 F.3d 174, 178 (1st Cir.1997).

### III.

#### *Analysis*

Mapfre's motion for partial summary judgment argues two general theories: (1) Plaintiff Campbell cannot recover for emotional distress, loss of society, and loss of consortium under general maritime law because she was not on the vessel at the time of the accident; (2) Plaintiffs' property-based claims should be dismissed because Plaintiff Campbell entered into a settlement agreement on August 28, 2002. We address each of these arguments in turn.

#### A. *General Maritime Law Claims*

In the plethora of pleadings submitted to the court, the parties entered into a relentless battle respecting the applicable law. Defendants maintain that general and federal maritime law principles apply

because jurisdiction is based on 28 U.S.C. § 1333. Additionally, Defendants argue that general maritime law is in effect in Puerto Rico's navigable waters unless there is conflicting state legislation [1] with federal maritime law.

Plaintiffs counter that Article 1802, 31 L.P.R.A. § 5141 (1990 & Supp.2000), applies because the Federal Relations Act, 48 U.S.C. §§ 731–916 (2002 & Supp.2003), empowers Puerto Rico to enact legislation inconsistent with federal maritime law.[2] *Docket Document Nos. 34, 58, and Docket Documents Tendered on August 1, 2003, and on October 31, 2003.* Plaintiffs propose that 31 L.P.R.A § 5141 is inconsistent with and supersedes federal maritime law. The statute provides in relevant part: "A person who by an act of omission causes damage to another through fault or negligence shall be obliged to repair the damage so done." 31 L.P.R.A. § 5141. Consequently, Plaintiffs maintain that the statute is inconsistent with federal maritime law, which does not provide for non-pecuniary damages, because it provides relief for emotional distress even when the plaintiff is not near the scene of the accident.

■ Because this case involves the malfunction of a vessel on navigable waters, it falls within the courts of admiralty jurisdiction. *See Yamaha Motor Corp., U.S.A. v. Calhoun,* 516 U.S. 199, 206, 116 S.Ct. 619, 133 L.Ed.2d 578 (1996). When admiralty jurisdiction is invoked, it is well settled that substantive admiralty law applies. *Id.* Simply stated, general maritime law governs liability in admiralty actions. *See Calhoun v. Yamaha Motor Corp., U.S.A.,* 216 F.3d 338 (3d Cir.2000); *see also East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 864, 106 S.Ct. 2295, 90 L.Ed.2d 865 (1986); *Byrd v. Byrd,* 657 F.2d 615, 617 (4th Cir. 1981); *Schumacher v. Cooper,* 850 F.Supp. 438, 447 (D.S.C.1994). The United States Supreme Court established this principle to maintain uniformity in admiralty actions. *See Tucker v. Fearn,* 333 F.3d 1216, 1224 (11th Cir.2003). However, the exercise of admiralty jurisdiction "does not result in automatic displacement of state law." *Yamaha,* 516 U.S. at 206, 116 S.Ct. 619 (quoting *Jerome B. Grubart, Inc., v. Great Lakes Dredge & Dock Co.,* 513 U.S. 527, 545, 115 S.Ct. 1043, 130 L.Ed.2d 1024 (1995)). As we stated in our *Peemoller Sultan v. Pleasure Craft Contender* decision, "federal maritime law may be supplemented by state law in very discrete and exceptional procedural or *remedial* circumstances." 139 F.Supp.2d 230, 237 (D.P.R.2001)(emphasis added); *see also* 28 U.S.C. § 1333.

■ Unlike situations governing other states, Puerto Rico's position within admiralty law is unique because of its status as a United States territory. In *Guerrido v. Alcoa Steamship,* 234 F.2d 349 (1st Cir. 1956), the First Circuit analyzed the Fed-

---

**1.** Although Puerto Rico is a territory (Commonwealth), not a state, we will use the term "state law" to refer to Puerto Rico's legislation throughout this opinion.

**2.** The Federal Relations Act provides in pertinent part:

The harbor areas and navigable streams and bodies of water and submerged lands underlying the same in and around the island of Puerto Rico and the adjacent islands and waters, owned by the United States on March 2, 1917, and not reserved by the United States for public purposes, are placed under the control of the government of Puerto Rico.... All laws of the United States for the protection and improvement of the navigable waters of the United States and the preservation of the interests of navigation and commerce, except so far as the same may be locally inapplicable, shall apply to said island and waters to its adjacent islands and waters.

eral Relations Act, which governs preemption of admiralty law in Puerto Rico. The First Circuit decided that:

> [t]he rules of admiralty and maritime law of the United States are presently in force in the navigable waters of the United States in and around the island of Puerto Rico to the extent that they are not locally inapplicable either because they were not designed to apply to Puerto Rican waters or because they have been rendered inapplicable to these waters by inconsistent Puerto Rican legislation.

*Peemoller Sultan v. Pleasure Craft Contender,* 139 F.Supp.2d at 237 (citing *Guerrido,* 234 F.2d at 355). Therefore, despite Plaintiffs' efforts to persuade the court otherwise, it is evident that substantive general and federal admiralty law principles are in effect in Puerto Rico.

■■ Notwithstanding the application of substantive general admiralty law principles to determine liability, the "saving to suitors" clause of 28 U.S.C. § 1333 provides admiralty plaintiffs with state law procedural remedies. *See Ballard Shipping Co. v. Beach Shellfish,* 32 F.3d 623, 626 (1st Cir.1994); *Canino v. Londres,* 862 F.Supp. 685, 688 (D.N.H.1994). In *Yamaha,* the United States Supreme Court considered whether federal maritime law provides "the exclusive remedy in cases involving deaths of non-seafarers in territorial waters." 516 U.S. at 205, 116 S.Ct. 619. The facts of *Yamaha* involved a twelve-year old girl from Pennsylvania who died in a jet ski accident while vacationing in Puerto Rico. *Id.* at 201–02. Re-

lying on its decision in *Moragne v. States Marine Lines, Inc.,* 398 U.S. 375, 90 S.Ct. 1772, 26 L.Ed.2d 339 (1970), the Supreme Court determined that the damages available in a wrongful death action of non-seafarers are governed by state law. *Id.* at 216. Accordingly, even though general maritime law principles govern liability in an admiralty action, state law may supplement damages. *Id.*

### 1. Negligent Infliction of Emotional Distress

■ Defendants contend that under general maritime law, Campbell cannot recover for negligent infliction of emotional distress because she was not present at the time of the incident. *Docket Document No. 19.* Plaintiffs counter that under Puerto Rico law, a wife need not be present at the scene of the accident to recover for emotional distress.[3] *Docket Document No. 58.*

In *Peemoller,* we considered whether the parents and sisters of a diver who had sustained injuries while struck by a boat in Puerto Rico could recover damages for negligent infliction of emotional distress. 139 F.Supp.2d at 232–33. In making that decision, we determined that many "federal courts have recognized that a cause of action for negligent infliction of emotional distress lies in admiralty." *Id.* at 235. We listed the three standards governing liability for negligent infliction of emotional distress: (1) the "physical injury or impact" test; (2) the "zone of danger" standard; and (3) the "bystander proximity" theory. *Id.* Under the "physical injury or impact"

---

**3.** The original complaint clearly alleges a claim for negligent infliction of emotional distress. In their opposition to Defendants' motion, however, Plaintiffs asserted that Campbell was not "claiming any damages for 'negligent infliction of emotional distress.'" *Docket Document No. 34.* Plaintiffs there conceded that under federal maritime law, Campbell does not qualify for such damages. *Id.* Plaintiffs retracted this statement in a later pleading, averring that Campbell qualifies for negligent infliction of emotional distress under state law. *Docket Document No. 58.* Because the complaint clearly alleged negligent infliction of emotional distress, we will entertain Plaintiff Campbell's claim.

test, there is liability only when the plaintiff has suffered physical injury in addition to the emotional distress. *Id.* The "zone of danger" standard allows a plaintiff to recover when he or she witnesses another's endangerment is placed at risk of physical injury due to the defendant's negligence. *Id.* Finally, the "bystander proximity" test allows a plaintiff to recover for emotional distress if he or she: (1) is physically close to the scene of the accident; (2) directly witnesses the incident; and (3) is a close relation of the victim. *Id.*

In the present case, Defendants argue that they cannot be held liable for negligent infliction of emotional distress because Plaintiff Campbell does not meet any of these standards. *Docket Document No. 19.* Plaintiffs counter that we should apply Puerto Rico law, which does not require the plaintiff's presence, to determine liability. *Docket Document No. 58, Docket Document Tendered on August 1, 2003.* Alternatively, Plaintiffs argue that *Peemoller* does not apply because Young and Campbell are married, a fact they maintain distinguishes the present case from *Peemoller. Docket Document Tendered on October 3, 2003.*

■ Because negligent infliction of emotional distress is a cognizable claim under admiralty, general admiralty law governs liability. *Peemoller,* 139 F.Supp.2d at 235 (citing *Chan v. Soc'y Expeditions, Inc.,* 39 F.3d 1398 (9th Cir.1994)). Hence, Plaintiffs' contention that Puerto Rico law should apply to determine liability is incorrect. Under general maritime law, Campbell may not recover for negligent infliction of emotional distress because she does not meet any of the tests listed in *Peemoller,* 139 F.Supp.2d at 232–33, a fact that

Plaintiffs concede. *Docket Document No. 34.*

Plaintiffs' alternative argument that Campbell and Young's marriage distinguishes the present case from *Peemoller* is without merit. *See Peemoller,* 139 F.Supp.2d at 232–33. Campbell's marital status is inconsequential to a negligent infliction of emotional distress claim if she did not witness the incident. *Id.* We, therefore, dismiss Plaintiff Campbell's claim for negligent infliction of emotional distress.

### 2. *Availability of Non–Pecuniary Damages*

Defendants maintain that we should dismiss Campbell's non-pecuniary damages because they are not available under general maritime law.[4] *See Docket Document Tendered on October 17, 2003.* Alternatively, Defendants argue that non-pecuniary damages are remedies afforded pursuant to a cause of action, and not causes of action in and of themselves. *Id.* Plaintiffs counter that the Supreme Court's ruling in *Yamaha* allows non-seafarer plaintiffs to supplement their admiralty tort claims with state law remedies. *Docket Document No. 34.* Because Puerto Rico law allows plaintiffs to recover non-pecuniary damages, Campbell argues that we should not dismiss her claims for loss of consortium and society. *Docket Document Tendered on October 3, 2003.*

As we summarized *supra,* the Supreme Court's *Yamaha* decision held that state law remedies are available to non-seafarers injured in territorial waters. *Yamaha,* 516 U.S. at 216; *see also Schumacher v. Cooper,* 850 F.Supp. at 454 (holding that loss of consortium damages were permitted in a negligence action under general

---

**4.** Loss of consortium and loss of society are used interchangeably in admiralty law, and we follow that trend in this opinion and or-

der. *Nichols v. Petroleum Helicopters, Inc.,* 17 F.3d 119, 122 n. 4 (5th Cir.1994).

maritime law). In making its decision, the Supreme Court made a distinction between seamen, who are covered under the Jones Act, 46 U.S.C. § 688 (1975 & Supp. 2003), and non-seafarers, who are not covered under the Jones Act. *Id.* at 215. The Court reasoned that because Congress had not prescribed remedies for the wrongful death of non-seafarers in territorial waters, state statutes could supplement the available remedies under general maritime law. *Id.* at 216; *see also Kelly v. Bass Enter. Prod. Co.,* 17 F.Supp.2d 591, 599 (E.D.La.1998).

The Court reasoned that its concern for uniformity in prior decisions stemmed from the possibility that seamen would receive inequitable remedies depending on the damages available to seafarers under state law. *Id.* at 211–12. The Court observed that the principle of uniformity, which was a concern in admiralty jurisdiction, was not relevant because the decedent in *Yamaha* was not a seafarer. *Id.* at 211, 116 S.Ct. 619.

 Under Puerto Rico law, a plaintiff may recover for loss of consortium when his or her spouse has been injured. 31 P.R. Laws Ann. § 5141; *see also Smith v. Kmart Corp.,* 177 F.3d 19, 30 (1st Cir. 1999) (discussing whether loss of consortium damages awarded pursuant to Puerto Rico law were excessive). Thus, according to the Supreme Court's ruling in *Yamaha,* Puerto Rico law is applicable to determine damages available to non-seafarers injured while in Puerto Rico territorial waters. *Yamaha,* 516 U.S. at 216, 116 S.Ct. 619; *see also In re Consol. Coal Co.,* 228 F.Supp.2d 764, 772.

 We note, nonetheless, that *Yamaha* involved a wrongful death claim, whereas the case before us involves a non-fatal injury. The issue, then, is whether there is a distinction between a state law claim arising out of a fatal injury and a non-fatal one. Our reading of *Yamaha* and other maritime cases does not lead us conclude that such a distinction exists. *See Am. Exp. Lines, Inc. v. Alvez,* 446 U.S. 274, 100 S.Ct. 1673, 64 L.Ed.2d 284 (1980)(extending the damage element of loss of society to injured parties' spouses on the basis that there "is no apparent reason to differentiate between fatal and nonfatal injuries in authorizing the recovery of damages for loss of society"). Thus, we decline to restrict *Yamaha* to those situations where the non-seafarer is killed. *See In re Consol. Coal Co.,* 228 F.Supp.2d at 772 (holding that loss of consortium was available in a non-fatal accident).

Moreover, Defendants maintain that Plaintiff's non-pecuniary claims are not causes of action, but remedies. They argue that we should dismiss such claims because recovery is contingent upon successfully proving liability. *Docket Document Tendered on October 17, 2003.* Although Defendants are correct in contending that non-pecuniary damages are not causes of action, this argument does not terminate Plaintiff Campbell's claims. It is precisely because Campbell's non-pecuniary claims would be recoverable pursuant to the successful proof of defendant's liability that such claims survive the motion for summary judgment stage. However, "in order to recover for these damages, a plaintiff must still prove that defendants' conduct caused the injury." *Rosa v. Telemundo CATV, Inc.,* 907 F.Supp. 39, 43 (D.P.R.1995). Accordingly, Mapfre's motion for summary judgment as to Plaintiff Campbell's non-pecuniary damages is denied.

### 3. *Campbell's Strict–Liability Claim*

Plaintiffs' reply to Mapfre's motion argues that Plaintiff Campbell has a strict liability claim under both general maritime

law and state law.[5] *Docket Document Nos. 19, 34.* In response, Defendants maintain that Campbell may not recover for strict liability under general maritime law. *See Docket Document Tendered on June 17, 2003.* Notwithstanding the parties' propositions relating to Campbell's strict liability claim, Campbell did not allege strict liability in the complaint.[6] *Docket Document No. 1.* Therefore, there is no need to reach a decision regarding such cause of action.

## B. Property–Based Claims

### 1. Plaintiff Campbell's Claims

■ On August 28, 2002, Plaintiff Campbell entered into a settlement agreement with Defendants Hunter, Nauti Sport, and de Lemos, whereby the parties "completely release and forever discharge each other from all claims for property damage **(excluding personal injury claims).**" *Docket Document No. 19* (emphasis in original). Defendants argue that the settlement agreement has a res-judicata effect on all property-based claims brought in the present complaint. *Id.* Plaintiff Campbell does not proffer any arguments to counter Defendants' contention. Instead, Plaintiff Campbell states that "no cases or doctrines of *res judicata* were cited in the motion or memorandum, so Campbell really has no idea about what is being invoked."[7] *Docket Document No. 34.* Alternatively, Plaintiff Campbell maintains that her claims are, in fact, personal injury claims, which she specifically reserved in the settlement agreement. *Id.*

Although the complaint claims damages for breach of warranties and strict liability, it is Plaintiff Young, not Plaintiff Campbell, who alleges liability under these theories. *Docket Document No. 1.* Plaintiff Campbell, on the other hand, alleges liability for loss of consortium, emotional distress, and loss of society.[8]

Upon a careful review of the complaint, we find that Plaintiff Campbell has not requested relief for any property-based claims. However, to the extent that claims six and eight could be construed as having a property basis, Plaintiff Campbell released Defendants from liability for all property damages pursuant to the August 28, 2002, settlement agreement. We hold that any and all of Plaintiff Campbell's property-based claims are, therefore, dismissed.

### 2. Plaintiff Young's Claims

Defendants argue that Plaintiff Young's breach-of-warranty claims should be dismissed because he does not have privity of contract with Defendants. *Docket Document No. 19.* Defendants maintain that the "warranty claims arose exclusively from Plaintiff Campbell's proprietary interest in the vessel at issue because it was Campbell the one who bought said vessel." *Id.* Plaintiffs do not dispute that Plaintiff Campbell was the sole owner of the vessel. *Docket Document No. 34.* Instead, Plaintiffs aver that tort liability may flow from

---

5. Plaintiffs make such an argument, even though Mapfre's motion does not request the dismissal of Campbell's strict liability claim.

6. Although Plaintiff Young claimed liability under strict liability, the parties did not address this cause of action in their pleadings.

7. We remind Plaintiffs that res judicata can be raised sua sponte. Therefore, even when Defendants fail to cite any cases to support their res-judicata argument, it is in Plaintiffs' best interest to properly defend their claims.

8. Although the complaint alleges ten "claims for relief," the third, fourth, and fifth claims allege essentially the same cause of action: negligent infliction of emotional distress, loss of consortium, and loss of society.

breach of warranty claims. *Id.* Additionally, Plaintiffs argue that the Supreme Court of Puerto Rico has held that "personal injury actions against manufacturers based upon express or implied warranty [are] in reality an action [sic] for strict liability, and that privity of contract [is] not a requirement." *Id.*

■ Breach of warranty claims "fall within the province of state law and [are] outside our admiralty jurisdiction." *Marshall v. Wellcraft Marine, Inc.,* 103 F.Supp.2d 1099, 1112 (S.D.In.1999)(citing *East River S.S. Corp. v. Transamerica Delaval, Inc.,* 476 U.S. 858, 872 n. 7, 106 S.Ct. 2295, 90 L.Ed.2d 865 ("If the charterers' claims were brought as breach-of-warranty actions, they would not be within the admiralty jurisdiction. . . . [s]tate law would govern the actions.")). Consequently, we apply state law.

■ Absent a contrary stipulation, claims for breach of warranty are contractual in nature under Puerto Rico law. *Ramos Santiago v. Wellcraft Marine Corp.,* 93 F.Supp.2d 112, 121 (D.P.R.2000) (interpreting 31 L.P.R.A. § 3842 (1990)). Section 3841 of the Puerto Rico Civil Code ("the Code") requires sellers to provide buyers with a warranty against hidden defects that render a product sold "unfit for the use to which it was destined." 31 L.P.R.A. § 3841 (1990 & Supp.2000); *Correa v. Cruiser, A Div. of KCS Intern., Inc.,* 298 F.3d 13, 22 (1st Cir.2002). Additional-

ly, section 3842 of the Code provides for a seller's liability even when the defects are unknown to the seller. 31 L.P.R.A. § 3842 (1990 & Supp.2000). · If there is a breach of these warranties, section 3843 of the Code allows a *purchaser* to choose between rescission of the contract or a reduction in the product's price. 31 L.P.R.A. § 3843 (1990 & Supp.2000); *Correa,* 298 F.3d at 22. The Code, however, does not provide remedies for personal injuries. *In re Dupont–Benlate Litig.,* 877 F.Supp. 779, 784 n. 4 (D.P.R.1995). Plaintiff Young did not purchase the vessel and, therefore, he may neither request relief under section 3843 of the Code nor recover damages for personal injuries under section 3843.[9]

■ Alternatively, Plaintiffs argue that under Puerto Rico law, breach of warranty claims are essentially strict liability claims and, therefore, no privity of contract is required. *Docket Document No. 34.* In *Mendoza v. Cervecería Corona,* the Supreme Court of Puerto Rico held that personal injury actions based on breach of implied warranty should be construed as strict liability claims, which do not require privity of contract. 97 P.R.R. 487, 1969 WL 21603 (1969); *see also In re Dupont–Benlate Litig.,* 877 F.Supp. at 787; *Montero Saldana v. A.M.C.,* 107 P.R. Dec. 452, 456, 1978 WL 48845 (1978). Thus, for all intents and purposes, Plaintiff Young's breach of warranty claims are tantamount to strict liability claims under Puerto Rico law.[10]

---

9. Although Defendants do not address the issue, we note that actions brought for breach of warranty must be filed within six months "from the day the steps to come to an understanding following the contract were interrupted." *Ferrer Delgado v. General Motors Corp.,* 100 P.R.R. 246, 254, 1971 WL 30376 (1971); 31 L.P.R.A. § 3847 (1990 & Supp. 2000). This standard has been interpreted leniently. *Correa,* 298 F.3d at 22. Considering that the incident occurred on February 14, 2002, and the complaint was filed on

February 6, 2003, it is likely that the breach of warranty claims are time-barred.

10. Bearing in mind that Plaintiffs are cognizant of this interpretation, it does "not make much sense to [plead] contractual implied warranty and negligence with strict liability." *In re DuPont–Benlate Litig.,* 877 F.Supp. at 784 n. 4. Thus, alleging breach of warranty claims was superfluous and resulted in the inefficient use of this court's resources.

Because Plaintiff Young cannot claim relief under section 3843 of the Code, his claims for personal injuries based on breach of warranty are dismissed. However, inasmuch as such claims may be construed as strict liability claims, Plaintiff Young may proceed to seek relief under a strict liability theory.

## IV.

### Conclusion

In accordance with the foregoing, we GRANT in part and DENY in part Mapfre's motion for partial summary judgment. *Docket Document No. 19, Reply Tendered on June 17, 2003, Response Tendered on October 17, 2003.*

**IT IS SO ORDERED.**